The CITY OF AMARILLO and The Civil Service Commission of the City of Amarillo, Appellants,

v.

James K. FENWICK, Appellee.

No. 07–99–0189–CV.

Court of Appeals of Texas, Amarillo.

April 6, 2000.

Rehearing Overruled May 10, 2000.

Merril E. Nunn, City Attorney, Pamela Wolek, Assistant City Attorney, Amarillo, for appellant.

B. Craig Deats, Jenkins & Deats, P.C., Austin, for appellee.

Before BOYD, C.J., and QUINN and JOHNSON, JJ.

QUINN, Justice.

The City of Amarillo and its Civil Service Commission (collectively referred to as the City) appeal from a final judgment entered in favor of James K. Fenwick (Fenwick). Via two points, the City contends that the trial court erred in concluding that the City denied Fenwick's purported statutory right to a continuance of his civil service hearing and his rights against self-incrimination and to due pro-

cess. This is allegedly so because Fenwick had no right to a postponement of the hearing. We affirm.

## Background

The dispute arises from the City's effort to terminate Fenwick's employment with the Amarillo Fire Department. Fenwick had originally been indicted in 1995 for the commission of a felonious act. Because of the indictment, his supervisor temporarily suspended him. Thereafter, the State dismissed the indictment once Fenwick agreed to plead guilty to a Class A misdemeanor (that is, engaging in organized criminal activity), have his adjudication of guilt deferred, and be placed on community supervision. Similarly, the City agreed to reinstate him if he, among other things, complied with the terms of his community supervision.

On March 21, 1998, within one year of his reinstatement, Fenwick was stopped by an officer with the Texas Department of Public Safety and arrested for driving while intoxicated. This circumstance spawned various actions. The first involved an attempt by the State to revoke Fenwick's community supervision via a motion to adjudicate his guilt; a ground asserted as basis for revoking his community supervision was his consumption of alcohol on March 21st. The second circumstance concerned the City's effort to terminate Fenwick's employment given his alleged violation of 1) the City's "Personnel Rules and Regulations" and 2) the conditions of his community supervision. Moreover, the City's efforts culminated in Fenwick's "indefinite suspension."

Immediately after discharge, Fenwick appealed the decision to the Civil Service Commission. In asking that the decision be reviewed, he also requested that any hearing be postponed "for not more than 30 days after the date of the final disposi-

tion of the *indictment*."[1] Fenwick felt himself entitled to the delay because the "indefinite suspension directly relate[d] to a criminal indictment." The panel entertaining the appeal convened a hearing, considered his request, and then denied postponement. Thereafter, Fenwick refused to participate in the proceeding and left. His departure, however, did not terminate the hearing. Rather, the panel continued and eventually upheld Fenwick's indefinite suspension.

Approximately twelve days after the hearing, Fenwick sued the City for reinstatement and back pay. At trial, he argued that the City violated his rights to a postponement, to due process, and against self-incrimination. The parties submitted the case to the trial judge upon stipulated facts and argument. Subsequently, the trial court determined that each of those rights were violated and entered judgment reinstating Fenwick with back pay. The City then appealed.

## Discussion

Through its first point, the City argues that the trial court erred in concluding that Fenwick was denied his right to a continuance. This is allegedly so because the accusations upon which it based its discharge were not "directly related" to the criminal prosecution then pending against him. We disagree and overrule the contention.

▮ Statute dictates that

[a] fire fighter or police officer indicted for a felony or officially charged with the commission of a Class A or B misdemeanor who has also been charged by the department head with civil service violations *directly related to* the indictment or complaint may delay the civil service hearing for not more than 30

1. Interestingly, no indictment was pending against him at the time. Again, the original had been dismissed when he pled to a Class A misdemeanor. So, the only formal charge pending against Fenwick at the time was the class A misdemeanor involving his engagement in organized criminal activity.

days after the date of the final disposition of the indictment or complaint.

TEX. LOC. GOV'T CODE ANN. § 143.056(d) (emphasis supplied). Omitted from the edict, however, is a definition of the phrase "directly related to." Thus, the task falls upon us to construe the phrase, and, in doing so, we follow various settled rules of statutory construction. The first rule obligates us to ascertain the intent of the legislature in using the words. TEX. GOV'T CODE ANN. § 312.005 (Vernon 1998); *Scolaro v. State ex. rel. Jones,* 1 S.W.3d 749, 755 (Tex.App.—Amarillo 1999, pet. denied). Though it seems somewhat circular, that intent is to be garnered from the language of the statute itself. *Id.* at 755–56. In other words, we are to proceed under the notion that what the legislature meant is best understood by the words it used. Moreover, in reading those words, we must assign them their ordinary meaning, unless they constitute terms of art. TEX. GOV'T CODE ANN. § 312.002(a) & (b).

■ Because no one suggests that the phrase "directly related to" constitutes a term of art, we now turn to assessing its ordinary meaning. Among the common definitions of the word "related" we find "connected or associated as by origin or kind", *Webster's New World Dictionary,* (2d ed.1980), and "connected by reason of an established or discoverable relation", *Webster's Third New International Dictionary* (1976). In turn, scholars define "directly" as a "close relational proximity" or the absence of an intervening agency, instrumentality or determining influence. *Webster's Third New International Dictionary* (1976). So, when put together, the plain meaning of the words "directly related to" connotes an uninterrupted, close relationship or link between the things being considered. Therefore, what the legislature intended by enacting section 143.056(d) was that the civil servant be given a continuance if the civil service violations levied against him have a close, uninterrupted link to a felony or class A or B misdemeanor formally pending against that same employee. With this in mind, we decide whether the civil service violations levied against Fenwick were directly related to the formal criminal complaint pending against him.

Of the civil service violations uttered against Fenwick, several concerned his use of alcohol. For instance, in its Notice of Suspension, the City focused upon 1) how Fenwick's community supervision and return to work were conditioned upon his foregoing the consumption of alcoholic beverages, 2) how he was arrested on March 21, 1998 "for driving while intoxicated," 3) how he was "using alcohol in violation of [his] probation," 4) how he was "abusing alcohol prior to and after ... reinstatement" and, most importantly, 5) how these infractions and others violated the terms and "conditions of [his] probation and thus the conditions of [his] reinstatement." In short, Fenwick's consumption of alcohol was viewed by the City as at least one basis for his termination from employment, and the City pursued this theory via the evidence it presented at the hearing.[2]

Moreover, the State similarly alluded to Fenwick's consumption of alcohol as a basis for its action against him. That is, the State sought to revoke Fenwick's community supervision and have him adjudicated guilty of the Class A misdemeanor then pending against him because, among other things, he "consumed alcohol on or about March 21, 1998."

■ So, what we have here is the same factual circumstance (that is, Fenwick's consumption of alcohol) used by both the City and the State as a basis not only for Fenwick's eventual suspension but also his loss of community supervision and adjudication of guilt, respectively. Given this

**2.** That evidence consisted in part of an affidavit from the D.P.S. officer who arrested Fenwick. Therein, the officer described how Fenwick smelled of alcohol and admitted to consuming it.

identity of facts, we cannot but say that there existed an uninterrupted, close relationship between the civil service violations alleged in the Notice of Suspension and Fenwick's adjudication of guilt for the crime which was pending against him at the time. Simply put, the two were directly related, and Fenwick was entitled to the continuance provided in section 143.056(d) of the Texas Local Government Code.

Accordingly, the judgment of the trial court is affirmed.[3]

---

**3.** Ruling as we do relieves us of having to address the City's second point of error. That is, we need not determine whether Fenwick was entitled to reinstatement due to the purported constitutional violations committed by the City if he was entitled to the same relief due to the City's denial of a continuance. Moreover, the City does not dispute that he would have been entitled to reinstatement if he was wrongfully denied a continuance.