Gary VIDAURRI, Appellant,

v.

Kathy and Gifford ENSEY, Appellee.

No. 07–00–0123–CV.

Court of Appeals of Texas,
Amarillo.

Feb. 14, 2001.

Joe Marr Wilson, Amarillo, for appellant.

Greta Rapstine Crofford, Amarillo, for appellee.

Before QUINN, REAVIS, and JOHNSON, JJ.

QUINN, Justice.

Gary Vidaurri (Viduarri) appealed from an order terminating the parent-child rela-

tionship between himself and his son, DCV. Though four issues are asserted on appeal, only one need be addressed. That issue involves the legal sufficiency of the evidence supporting the court's determination; Viduarri argues that no evidence exists. We agree and reverse.

### Background

Kathy and Gifford Ensey (collectively referred to as the Enseys) petitioned the trial court to terminate the parent-child relationship between Vidaurri and DCV. So too did they seek judgment permitting them to adopt the child. There were seven grounds alleged in the petition which purportedly justified termination of the parent-child relationship. However, only one was found to exist by the trial court. It concerned Viduarri's conviction for indecency with a child. *See Vidaurri v. State,* 981 S.W.2d 478 (Tex.App.—Amarillo 1998, pet. granted) (describing same).[1] That is, after trial, the court found, by clear and convincing evidence, that Viduarri had "been placed on deferred adjudication community supervision for being criminally responsible for the death or serious injury of a child under section 21.11 of the Texas Penal Code." It also determined that terminating the parent-child relationship was "in the best interest of the child". As previously mentioned, Viduarri contends that this decision has no evidentiary support. Therefore, he appealed.

### Standard of Review

The standard of review applicable to issues like that at bar is explained in *In re*

R.D.S., 902 S.W.2d 714 (Tex.App.—Amarillo 1995, no writ). Rather than reiterate it, we refer the parties to that opinion.

### *Application of Standard*

Statute provides that

[t]he court may order termination of the parent-child relationship if the court finds by clear and convincing evidence ... that the parent has ... been convicted or has been placed on community supervision, including deferred adjudication community supervision, for being criminally responsible for the death or serious injury of a child under the following sections of the Penal Code or adjudicated under Title 3 for conduct that caused the death or serious injury of a child and that would constitute a violation of one of the following Penal Code sections ... Section 21.11(indecency with a child) ... and ... termination is in the best interest of the child.

TEX. FAM.CODE ANN. § 161.001(1)(L)(iv) & (2) (Vernon Supp.2000). These two subsections of § 161.001 were relied upon by the trial court to terminate the parent-child relationship at bar. Furthermore, the element of the statute which the Enseys allegedly failed to prove was that encompassing the "death or serious injury of a child".[2] In other words, no evidence appeared of record illustrating that the crime for which he was purportedly convicted entailed the death of or infliction of serious injury to a child. We agree.

■ As described in *Vidaurri v. State, supra,* Vidaurri pled guilty to the offense

---

1. The conviction is currently on appeal to the Texas Court of Criminal Appeals. The latter granted discretionary review but, as of the date of this opinion, has not rendered a decision.

2. Vidaurri also argued that the Enseys failed to present any evidence illustrating that he

was convicted of or placed on deferred adjudication for violating § 21.11 of the Texas Penal Code. This is allegedly so because the conviction is on appeal and, consequently, not final. However, we need not address the matter at this time.

of indecency with a child. Though initially being granted deferred adjudication, he was eventually adjudicated guilty and sentenced to prison. Furthermore, the child involved in that prosecution was his stepdaughter ADF. This incident allegedly entitled the Enseys to terminate the parent-child relationship between Viduarri and his son. In support of the contention, they made a two-pronged argument. Through the first, they averred that independent proof of serious injury was unnecessary. And, via the second, it was posited that the *record contained evidence illustrating that* ADF suffered serious injury due to the indecency committed by Viduarri. We address the former now.

Allegedly, the "plain language of [§ 161.001(1)(L)(iv) ] only require[d] that the trial court find that Appellant had been placed on community supervision, including deferred adjudication community supervision for indecency with a child". The Enseys further urged that the "serious injury [contemplated by the statute] must necessarily be inferred, based on the way the statute was written and the particular language the enacting legislature chose to use . . . ." Yet, no authority was cited supporting the proposition. Nor did our own research uncover any. Yet, all is not lost for the wording of the statute itself and the application of rules of statutory construction provide ample guidance.

 One rule of construction obligates us to afford meaning to every word and phrase in a statute. *Chevron v. Red-*

*mon,* 745 S.W.2d 314, 316 (Tex.1987); *City of Amarillo v. Fenwick,* 19 S.W.3d 499, 500 (Tex.App.—Amarillo 2000, no pet.) In that at bar appears the phrase "death or serious injury of a child". Thus, we cannot ignore it. *Id.* Furthermore, the phrase is used in relation to the parent (whose parental rights are in jeopardy) having been criminally responsible for same. That is, the edict directs that termination may be permitted "if the court finds . . . that the parent has . . . been convicted or has been placed on community supervision . . . for being criminally responsible for the death or serious injury of a child . . . ." TEX. FAM. CODE ANN. § 161.001(1)(L). And, when the crimes enumerated in the statute are placed in context with the aforementioned words, we cannot but conclude that termination is permissible only if 1) the parent *has committed acts constituting a violation* of one of the crimes enumerated in § 161.001(1)(*l* )(i) through (xiii), 2) the parent's guilt for committing the crime has been adjudicated or the adjudication of that guilt has been deferred, and 3) the parent, in committing the acts which underlie the crime, was responsible for a child's death or serious injury.[3] In sum, the contention of the Enseys would have us ignore words which the legislature placed in the statute. We cannot and will not do that.

 As to the contention that serious injury "must necessarily be inferred" from the mere commission of an enumerated crime, we again note the dearth of citation

**3.** Consideration of the predecessor to the current § 161.001(1)(L) lends further support to our determination. Before amendment, the statute read: "been adjudicated to be criminally responsible for the death or serious injury of a child". TEX FAM.CODE ANN. § 161.001(1)(L) (Vernon 1996). In construing the proviso, one could not reasonably claim that neither death nor serious injury were elemental. Indeed, the statute expressly referred to an adjudication of being criminally responsible for that particular result. The amendment merely redefined some of the existing words and added others. It did not remove allusion to responsibility for death or injury. Thus, in retaining the phrase in the amended statute, it is reasonable to conclude that the legislature sought not to utterly divest the new statute of its old meaning.

supporting their argument. Similarly, nowhere do the Enseys explain why such an inference is necessary "based upon the way the statute was written and the particular language the enacting legislature chose to use". Instead, we are left to guess at what portions of the statute and the juxtaposition of its parts they consider informative and determinative. Additionally, we find nothing in the statute itself expressly directing a court to infer the existence of death or serious injury to a child simply because a parent was convicted of or granted deferred adjudication *viz-a-viz* an enumerated crime. Indeed, such could not be inferred from some of the crimes itemized, especially that involved at bar. For instance, to be convicted of indecency with a child requires proof that the accused engaged in sexual contact with the child or exposed his anus or genitals while knowing the child was present and with the intent to arouse or gratify the sexual desire of any person. TEX. PENAL CODE ANN. § 21.11(a)(1) & (2) (Vernon Supp. 2000). From these elements we immediately see that the focus is upon the acts of the accused, not the effect upon or perception of the child. Arguably, the accused could engage in sexual contact and violate § 21.11(a)(1) by simply touching a sleeping child's genitals with the intent to arouse his (*i.e.* the accused's) own sexual desires.[4] And, if the sleeping child never awoke or perceived the incident, it can hardly be inferred that the youth must have suffered death or serious injury merely because the accused could still be convicted of the crime. As can be seen, the Enseys' premise that serious injury must automatically be inferred from the mere commission of indecency with a child fails to survive reasonable analysis. For this reason, we reject it.

■ Next, the second prong of the Enseys' argument concerns the supposed presence of evidence showing serious injury. This purported evidence takes the form of 1) an order prohibiting Vidaurri from contacting ADF, 2) Viduarri's confession to committing the indecency, 3) ADF's perception of the indecency, 4) the removal of the child from the home, 5) the child and other children being made the subject of a "Child Protective Services protection plan regarding the sexual abuse allegations against Appellant", and 6) the trial court's conclusion that Viduarri was placed on deferred adjudication community supervision for being criminally responsible for the . . . serious injury of a child. . . ." Yet, analysis leads us to conclude that the foregoing indicia, whether considered collectively or separately, fall short of constituting a scintilla of evidence, much less some evidence, of serious injury.

■ We address the last indicia first. Simply put, a finding of fact is not evidence proving the fact supposedly found to exist. This is so because a finding of fact is little more than a characterization or construction of the evidence by the factfinder. And, before a finding can be valid, it must enjoy evidentiary support. *See Amador v. Berrospe*, 961 S.W.2d 205, 207 (Tex.App.—Houston [1st Dist.] 1996, writ denied). For instance, before a fact-finder can legitimately find that an object before it is a car, it must have before it evidence from which it can be deduced that the object is a car. That the fact-finder concludes that it is a car, is not proof that it is a car. So, that the trial court found Viduarri had been placed on deferred adjudication community supervision for being criminally responsible for serious injury to a

---

4. Sexual contact is defined as touching of the anus, breast, or any part of the genitals of another person with intent to arouse or grati-

fy the sexual desire of any person. TEX. PENAL CODE ANN. 21.01 (Vernon 1994).

child is not in and of itself evidence that Viduarri was criminally responsible for serious injury to a child.

■ Concerning the directive to forego contacting ADF, it appeared as a condition of his community supervision. Not only was he barred from contacting her, he was also prohibited from contacting other persons "17 years of age and under." Why this was made a condition went unexplained. Similarly undeveloped is whether it was because he inflicted serious injury upon anyone. Furthermore, nothing before us indicates that the only reason why such a condition could be imposed is because he seriously injured a child while committing the indecency. Given this, we are unable to conclude that Viduarri's being prohibited from contacting the youth constitutes any evidence of serious injury to a child.

■ Next, Vidaurri did not confess to violating § 21.11 of the Penal Code at the trial. Rather, he invoked his Fifth Amendment right against self-incrimination. Furthermore, and assuming that he had so confessed guilt, the only way that the confession itself could be some evidence of having seriously injured ADF would be if such injury were implicit in the offense of indecency with a child. Yet, as discussed above, we cannot so conclude. Thus, his non-confession to the offense in and of itself constitutes no evidence of serious injury.

■ Next, that the child perceived the indecency, as exemplified by her informing a relative of the incident, does not mean that she suffered serious injury. Indeed, the effect, if any, of the incident upon her physical or mental condition went unaddressed at trial. Similarly absent is any testimony, expert or otherwise, suggesting that one who has been the victim of an indecency within the ambit of § 21.11 necessarily suffers any injury, serious or otherwise. Given this, we cannot hold that a child's disclosing the commission of the crime to another is any evidence that the child suffered serious injury.

■ Finally, the record discloses that Vidaurri was barred from seeing ADF as well as his own child while the Child Protective Service investigated complaints of sexual abuse levied against him. So too does it contain evidence illustrating not only that the children were part of a Child Protective Service protection plan but also that the children were later removed from the home. Yet, whether these events occurred because Viduarri inflicted serious injury upon any one goes unmentioned in this record. And, to conclude that his departure from the home while an investigation proceeded constituted some evidence of serious injury would be utter speculation. The same can be said of the inclusion of the children in a protective plan; whether they were included because they suffered injury is speculative at best. Furthermore, statute reveals that children may be removed from their homes for reasons other than suffering serious injury. For instance, removal can occur if there exists an *"immediate danger* to the physical health or safety of the child . . . and that continuation in the home would be contrary to the child's welfare." Tex. Fam.Code Ann. § 262.102(a)(1) (emphasis supplied). The term "immediate danger" insinuates the potential for harm yet to come, as opposed to harm that has already occurred. Thus, removal due to the prospect of future harm is not evidence that anyone has already suffered harm or injury.

In conclusion, the indicia proffered by the Enseys as evidence of serious injury to a child does not constitute such evidence. Its sum total equals nothing more than speculation of such evidence. Further-

more, our own review of the record finds nothing to fill the void. Thus, we cannot but hold that the trial court's conclusion that Viduarri was criminally responsible for the death or serious injury of a child lacks all evidentiary support.

Accordingly, we sustain the first issue on appeal, reverse those portions of the order 1) terminating the parent-child relationship between Viduarri and DCV, 2) granting the adoption of DCV to the Enseys and 3) changing the name of DCV. We further order that the termination of the parent-child relationship between Viduarri and DCV be denied and that the adoption of DCV by the Enseys be denied. Tex.R.App. Proc. 43.2(c) (permitting the trial court to reverse the judgment and render that which the trial court should have rendered). In all other respects, the "Order Terminating Parental Rights and Granting Adoption" is affirmed.[5]

---

**5.** In holding as we do, we do not suggest that Viduarri is a fit parent or that the parent-child relationship between him and DCV can- not be terminated. We merely say that no evidence supported the basis for termination found by the trial court.