60 S.W.3d 376 (2001)
In the Interest of L.S.R., a Child.
No. 2-00-324-CV.
Court of Appeals of Texas, Fort Worth.
November 8, 2001.
Rehearing Overruled December 6, 2001.
*377 Dean M. Swanda, Arlington, for Appellant.
Tim Curry, Criminal District Attorney, Charles M. Mallin, Chief Appellate Assistant District Attorney, Tanya S. Dahoney and Cindy Williams, Assistant District Attorneys, Fort Worth, for Appellee.
Panel F: JOHN HILL, J., (Retired, Sitting by Assignment), CAYCE, C.J., and WALKER, J.

OPINION
PER CURIAM.
J.R. and L.R. appeal from a judgment terminating their parental rights to their daughter L.S.R., a judgment based upon a jury verdict. In eleven issues, they contend that: (1) the trial court erred by admitting a certified record of J.R.'s deferred adjudication probation for the offense of indecency with a child; (2) there is no evidence or factually insufficient evidence to terminate J.R.'s parental rights under section 161.001(1)(L)(iv) of the Texas Family Code; and (3) the evidence supporting the other remaining grounds for termination is factually insufficient. We reform the trial court's judgment and affirm as reformed.
Appellants urge in issue one that the trial court erred by admitting into evidence a certified record of J.R.'s deferred adjudication probation for indecency *378 with a child. Our record reflects that after counsel for appellants made certain objections, a redacted version of the record was offered. At that time, counsel for appellants indicated that there was no objection. Consequently, we hold that nothing is presented for review with respect to this issue. See Williams v. State, 834 S.W.2d 502, 507 (Tex.App.-Fort Worth 1992, pet. ref'd). Appellants may not rely on the initial objection. See id. We overrule appellants' contention in issue one.
Appellants contend in issue two that there is no evidence to terminate J.R.'s parental rights under section 161.001(1)(L)(iv) of the Texas Family Code. The burden of proof in an involuntary termination proceeding is clear and convincing evidence, which is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. See Swinney v. Mosher, 830 S.W.2d 187, 194 (Tex.App.-Fort Worth 1992, writ denied). In determining a no evidence point, we consider all of the evidence in the light most favorable to the party in whose favor the judgment has been rendered and indulge every reasonable inference from the evidence in that party's favor. In re D.T., 34 S.W.3d 625, 630 (Tex.App.-Fort Worth 2000, pet. denied) (op. on reh'g). We will only sustain a contention of no evidence when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. Swinney, 830 S.W.2d at 194.
Section 161.001(1)(L)(iv) provides, as a ground for termination, that one has:
(L) been convicted or has been placed on community supervision, including deferred adjudication community supervision, for being criminally responsible for the death or serious injury of a child under the following sections of the Penal Code or adjudicated under Title 3 for conduct that caused the death or serious injury of a child and that would constitute a violation of one of the following Penal Code sections:
....
(iv) Section 21.11 (indecency with a child);
....
Tex. Fam.Code Ann. § 161.001(1)(L)(iv) (Vernon Supp.2001).
In addition to a showing that J.R. had received deferred adjudication for the offense of indecency with a child, evidence was presented showing that the offense involved his four-year-old cousin, at a time when J.R. was sixteen. There was also evidence that J.R. had previously been treated for pedophilia. There was no showing that J.R.'s cousin suffered death or serious injury as a result of his conduct.
We hold that there is legally insufficient evidence to support this ground for termination. See Vidaurri v. Ensey, 58 S.W.3d 142, 143-48 (Tex.App.-Amarillo 2001, no pet. h.). The State urges that serious injury to a child may be inferred from proof of the conviction, relying on In re K.R., 22 S.W.3d 85, 88 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (en banc op. on reh'g) and Segovia v. TDPRS, 979 S.W.2d 785, 787 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). As the State candidly notes, in neither case did the appellant contend that the evidence was insufficient because of a lack of evidence of death or serious injury to the child victim. Contrary to the State's argument, the statute requires that the defendant's *379 conduct must have caused death or serious injury to a child. While the conviction might be sufficient evidence of death or injury in those cases where death or serious injury to the child is an element of the offense, we hold that where death or serious injury is not an element of the offense, the conviction or deferred adjudication is not by itself sufficient evidence to support termination under section 161.001(1)(L)(iv). We sustain appellants' contention as presented in issue two. In view of our determination of this issue, we need not consider their contention as presented in issue three.
Appellants contend in issues four through eleven that the evidence is factually insufficient to show that they knowingly placed or allowed the child to remain in conditions or surroundings that endangered her emotional or physical well-being; they engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's emotional or physical well being; their illness or deficiency, in all reasonable probability, would continue to render them unable to provide for the child's needs until the child's eighteenth birthday; and the termination of their parental rights was in the child's best interest.
In making a factual sufficiency review, we must consider all of the evidence and determine if the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the trier of fact could not have reasonably concluded that there was a high probability that the conduct or endangerment of the child occurred or that termination was in the best interest of the child. In re D.T., 34 S.W.3d at 632.
Witnesses testified that the child had a broken arm and that appellants gave various explanations as to how she broke it. Carolyn McCloud, an investigator for Child Protective Services who investigated the injury to the child's arm, reported that the home was very dirty; it had a foul odor; there were roaches and flies everywhere; and the kitchen was in very bad condition. The worker replaced the child's walker because it would not stand up.
McCloud testified that the Appellants did not appear to watch or properly supervise the child. She said that whenever she went to the home the child was always in a crib, her walker, or a swing. According to McCloud, the Appellants would put her on the floor and just let her go without trying to keep her from numerous dangerous situations in the home. McCloud had some concerns about such dangers in the home, which included dresser drawers left hanging open where they could fall on the child and urine and dog feces on the floor of the home in an area where the child was allowed to crawl. McCloud stated that L.R. put the child in another room while she cared for her own sister, who, like both appellants, was mentally retarded. McCloud referred the appellants to Catholic Charities and requested parenting classes and anger management classes for J.R.
McCloud testified that when she visited the home several months later, in conjunction with a new referral, the condition of the home had not improved at all. She indicated that there was a very heavy odor of urine and that she could smell gas because the appellants were using the kitchen stove to heat the residence. Photos were introduced showing roaches in the refrigerator and freezer of the home at the time of McCloud's visit. McCloud said she had concerns about areas other than the bathroom and kitchen, but that J.R.'s mother, who lived with the couple, would not permit her to photograph other areas of the home.
*380 McCloud indicated that the whole house was strewn with things dangerous to the child. She related that the family had several dogs that were in and out of the house, one of which, she had been told, did not like the child and would always snap at her. She said there was a hole in the floor of the bathroom, the bathtub was filthy, and the toilet was black. According to McCloud, she observed appellants not watching the child, not protecting her, and not cleaning up the house or making it appropriate for the child. She related that despite the fact that various agencies were seeking to help, no progress was being made.
McCloud initiated the removal of the child from the home. She said that at the time of removal the child was not walking, was not talking, did not laugh, and was very expressionless; but, within days of removal, was walking by herself, was laughing, and, in general, had changed a lot. McCloud acknowledged that the appellants had the ability to learn, but had not shown any progress in doing so.
Other evidence showed that prior to removal from the home the child was developmentally delayed, but that she showed tremendous improvement while in foster care. Testimony showed that appellants did not make any progress with providing the child with a clean, safe environment; that appellants did not feed the child appropriately; and that they kept the child confined in a crib or stroller because she was easier to take care of that way. An MHMR worker testified that the child would occasionally step in dog feces on the floor of the residence. That worker testified that, when solid food was prepared for the child, roaches would crawl in the food if heat was not being directly applied.
Dr. Vince Lembo, a psychologist, testified that he conducted psychological reviews as to both appellants. He indicated that L.R. was mildly retarded with a partial hearing loss, while J.R. had an intermittent expressive disorder with mild mental retardation. He found that both L.R. and J.R. suffer from a mental or emotional illness or deficiency that renders them unable to provide for the physical, emotional, and mental needs of their child. He concluded as to both that their illness or deficiency would continue to make them unable to provide for the child's needs until the child's eighteenth birthday
Other witnesses testified about the developmental delay suffered by the child prior to removal and her subsequent improvement; the conditions in the appellants' home and the condition of the child, all as previously described; the inappropriateness of the child being placed with appellants' relatives; and about life in the child's foster home. We hold that the evidence is factually sufficient because the evidence supporting the finding is not so weak or the evidence to the contrary so overwhelming that the jury's answers should be set aside.
Appellants urge that the evidence is factually insufficient because: (1) they were unwittingly and unknowingly endangering the child because they are both mildly retarded; (2) they both love the child; (3) there is no evidence that the child would not continue to receive outside help if returned to them; (4) they sought medical help for the child after she broke her arm; (5) L.R. gave the child Tylenol when she had a fever; (6) their adaptive behavior ratings showed they were capable of living independently with some assistance; (7) L.R. could feed her disabled sister through a tube; (8) there was nothing to show that they could not meet the child's physical needs once she learned how to walk and talk; (9) they were capable of learning; (10) MHMR would continue working with the child regardless of who had custody; *381 (11) they went through great effort to comply with the Department's requests.
The fact that appellants are both mentally retarded does not, as a matter of law, negate their ability to knowingly neglect their children. See E.L.B. v. Tex. Dep't of Human Servs., 732 S.W.2d 785, 787 (Tex.App.-Corpus Christi 1987, no writ). The jury was therefore free to infer their mental state from their conduct in neglecting the child. See Burk Royalty Co. v. Walls, 616 S.W.2d 911, 922 (Tex. 1981). As to the other issues, the fact that there might be some evidence favorable to the appellants does not mean that the evidence is factually insufficient to support the jury's verdict. We overrule appellants' contentions as presented in issues four through eleven.
We reform the judgment to delete any reference to J.R. having been convicted or placed on community supervision, including deferred adjudication, for being criminally responsible for the death or serious injury of a child, or adjudicated under Title 3 for conduct that caused the death or serious injury to a child and that would constitute a violation of Section 21.11 of the Texas Penal Code. We affirm the judgment as reformed.