COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
| --- | --- | --- |
| R.F., | | No. 08-12-00173-CV |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 65th District Court |
| | § | |
| TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, | § | of El Paso County, Texas |
| | | (TC # 2009CM6364) |
| Appellee. | § | |

**O P I N I O N**

Appellant brings an accelerated appeal from the trial court's order terminating his parental rights to six minor children. In three issues, he complains of evidentiary error and challenges the sufficiency of the evidence. For the reasons that follow, we affirm.

**FACTUAL SUMMARY**

In September 2009, TDFPS removed six children from the care of their mother, V.M., and Appellant.[1] The Department was granted temporary conservatorship of the children. In

---

[1] In order of oldest to youngest, the children's initials are R.F., V.F., A.F., R.F., A.F., and J.F. In his brief, Appellant assigns the letters A-F to the children as follows:

October 2009, it appointed Priscilla Thornton as the case worker for all of the children. According to Thornton, the children were removed due to the parents' continued drug use. The children were also residing in a small, unsanitary home "that was not able to meet their needs." They were not eating and Child E tested positive for cocaine.

Thornton worked with Appellant and V.M. for approximately eighteen months, and in January 2011, they reached a settlement agreement. The Agreement provided that TDFPS would become the permanent managing conservator of the children, and the parents would be appointed as possessory conservators. The goal was family reunification. Thornton testified that the Agreement was designed to allow V.M. more time to "get her home in order." The Department felt that if the mother had more time, she could be successful and the children could be returned to her. At the time the Agreement was approved by the court, V.M. had a stable home and was looking for employment. Thornton prepared a service plan for the parents. Appellant was required to: (1) have weekly supervised visits with his sons; (2) provide financial support to V.M.; (3) obtain employment; (4) keep in communication with Thornton; and (5) attend the children's "educational appoint- -- needs." In February 2011, the trial court appointed TDFPS as permanent conservator of the children and V.M. and Appellant as possessory conservators.

---

Child A's initials are R.F.
Child B's initials are V.F.
Child C's initials are A.F.
Child D's initials are R.F.
Child E's initials are A.F.
Child F's initials are J.F.

For ease of reference, we will do likewise.

2

While visiting his sons in June 2011, Appellant was arrested on charges of indecency with a child for engaging in sexual contact with one of his daughters.[2] On September 29, TDFPS filed a petition for modification and termination of Appellant's and V.M.'s parental rights. At the time, Appellant was still incarcerated and V.M. had not had contact with the children since July. On November 1, Appellant pled guilty to the indecency charges. The trial court accepted his plea and placed him on deferred adjudication community supervision for a period of ten years. Once he was out of jail, Appellant contacted Thornton. After his release, he was only permitted to visit with his oldest son, Child A. Thornton testified that she allowed monthly, supervised visits because the child asked to see his father.

On April 24, 2012, TDFPS filed a first amended petition which provided, in relevant part:

**8. Termination of [Appellant's] Parental Rights**

If reunification with the father cannot be achieved, the Court should terminate the parent-child relationship between [Appellant] and the child [A, B, C, D, E, and F] under Chapter 161, Texas Family Code, because termination of the parent-child relationship is in the child's best interest and [Appellant] has committed one or more of the following acts or omissions:

**8.1.** knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

**8.2.** engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

**8.3.** failed to support the child in accordance with the father's ability during a period of one year ending within six months of the date of the filing of the petition;

**8.4.** been convicted or has been placed on community supervision, including deferred adjudication community supervision, for being criminally responsible for the death or serious injury of a child under the following sections of the Penal Code or adjudicated under Title 3 for conduct that caused the death or serious injury of a child and that would constitute a violation of one of the following Penal Code sections:

---

[2] The allegations related only to Child C. But at the May 4, 2012 hearing, testimony revealed that both Child C and Child B were sexually assaulted by Appellant.

§ 21.11 (indecency with a child)

**8.5.** constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months and: (1) the Department or authorized agency has made reasonable efforts to return the child to the father; (2) the father has not regularly visited or maintained significant contact with the child; and (3) the father has demonstrated an inability to provide the child with a safe environment;

**8.6.** failed to comply with the provisions of a court order that specifically established the actions necessary for the father to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child;

Hearings were conducted on April 30 and May 4, 2012. Appellant and V.M. testified at the hearing, as well as Thornton and Irene Burgos-Cadena, the children's therapist. The following exhibits were admitted into evidence: (1) the indictment charging Appellant with indecency with Child C; (2) the November 7, 2011 judgment finding Appellant guilty and ordering he be placed on deferred adjudication community supervision for ten years; (3) Cadena's records from her therapy sessions with the children; (4) the trial court's order approving the January 2011 Settlement Agreement; and (5) the February 2011 final order. On May 15, 2012, the trial court signed an order terminating Appellant's parental rights pursuant to Section 161.001(1)(L)(iv) of the Texas Family Code and found termination to be in the best interest of the children.

## BURDEN OF PROOF

The natural right of a parent to the care, custody, and control of their children, is one of constitutional magnitude. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see also Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599 (1982)(acknowledging

4

that a parent's rights to "the companionship, care, custody, and management" of their children are constitutional interests, "far more precious than any property right.") Not only is a parent's interest in maintaining custody of and raising his or her children "paramount;" it is quite possibly the oldest fundamental liberty recognized by our Courts. *See In the Interest of M.S., E.S., D.S., S.S., and N.S.*, 115 S.W.3d 534, 547 (Tex. 2003)(noting that Texas courts recognize that "a parent's interest in maintaining custody of and raising his or her child is paramount"); *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000)(in discussing the constitutional stature of parental rights, the United State Supreme Court said, "the interest of parents in the care, custody, and control of their children--is perhaps the oldest of the fundamental liberty interests recognized by this Court."); *see also In re M.S.*, 115 S.W.3d at 549 ("Termination of parental rights is traumatic, permanent, and irrevocable.").

Although parental rights are of constitutional magnitude, they are not absolute. *In the Interest of C.H.*, 89 S.W.3d 17, 26 (Tex. 2002)("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right."). A parent's rights may be involuntarily terminated through proceedings brought under Section 161.001 of the Texas Family Code. *See* TEX.FAM.CODE ANN. § 161.001 (West 2008). Under this provision, the petitioner must establish one or more of the acts or omissions enumerated under subsection (1) as grounds for termination and must also prove that termination is in the best interest of the child. *See id.* Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Texas Department of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

Because of the elevated status of parental rights, and the severity and permanency of termination, the quantum of proof required in a termination proceeding is elevated from the preponderance of the evidence to clear and convincing evidence.[3] *Santosky*, 455 U.S. at 747, 102 S.Ct. at 1391; *accord Holick*, 685 S.W.2d at 20-21.; *see In re M.S.*, 115 S.W.3d at 547 and *In the Interest of D.S.P. and H.R.P.*, 210 S.W.3d 776, 778 (Tex.App.--Corpus Christi 2006, no pet.)(cases recognizing that involuntary termination of parental rights is a drastic remedy which divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent.); *see also In the Interest of B.L.D.*, 113 S.W.3d 340, 353-54 (Tex. 2003)(noting that because of the severity and permanency of termination, due process requires the party seeking to terminate parental rights prove the necessary elements by the heightened burden of proof of clear and convincing evidence.).

"Clear and convincing evidence" means the measure or degree of proof that "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX.FAM.CODE ANN. § 101.007 (West 2008); s*ee In the Interest of J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see also In the Interest of J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007)(contrasting the standards applied in termination proceedings and the standards applied in modification proceedings); *In the Interest of C.D.*, No. 02-10-00070-CV, 2011 WL 1743688, at *4 (Tex.App.--Fort Worth May 5, 2011, no pet.). This intermediate standard falls between the preponderance of evidence standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979); *In re D.T.*, 34 S.W.3d 625, 630 (Tex.App.--Fort Worth 2000, pet. denied)(op. on reh'g).

---

[3]  This heightened standard is likewise statutorily mandated. *See* TEX.FAM.CODE ANN. § 161.001 (West 2008)(stating that, "The court may order termination of the parent-child relationship if the court finds **by clear and convincing evidence . . . .**" [Emphasis added]).

6

Although the proof must be more than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed. *Addington*, 588 S.W.2d at 570. We strictly scrutinize termination proceedings, and construe any statutes involving involuntary termination in favor of the parent. *Holick*, 685 S.W.2d at 20-21; *In the Interest of A.V.*, 849 S.W.2d 393, 400 (Tex.App.--Fort Worth 1993, no writ).

## STANDARDS OF REVIEW

When reviewing legal sufficiency or "no evidence" challenges to termination findings, we consider all of the evidence in the light most favorable to the trial court's finding, "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In the Interest of J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005), *quoting In re J.F.C.*, 96 S.W.3d at 266. We give deference to the fact finder's conclusions, indulge every reasonable inference from the evidence in favor of that finding, and presume the fact finder resolved any disputed facts in favor of its findings, so long as a reasonable fact finder could do so. *Id.*; *In re J.F.C.*, 96 S.W.3d at 266. We disregard any evidence that a reasonable fact finder could have disbelieved, or found to have been incredible, but we do not disregard undisputed facts. *In re J.P.B.*, 180 S.W.3d at 573; *In re J.F.C.*, 96 S.W.3d at 266. A legal sufficiency or no evidence point will only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *See Swinney v. Mosher*, 830 S.W.2d 187, 194 (Tex.App.--Fort Worth 1992, writ denied).

In reviewing the evidence for factual sufficiency, we must give due deference to the fact finder's findings, and we cannot supplement such judgment with our own. *In the Interest of H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006), *citing In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002) *and Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re H.R.M.*, 209 S.W.3d at 108; *quoting In re J.F.C.*, 96 S.W.3d at 266 (internal quotations omitted). Moreover, in applying this standard, our review "must not be so rigorous that the only factfindings that could withstand review are those established beyond a reasonable doubt." *In re C.H.*, 89 S.W.3d at 26; *citing Santosky*, 455 U.S. at 767-69, 102 S.Ct. 1388; *see also In re H.R.M.*, 209 S.W.3d at 108.

## EXCLUSION OF EVIDENCE

In Issue One, Appellant complains that the court erred by refusing to allow him to testify that, despite his guilty plea, he did not commit the offense of indecency with a child. During Appellant's initial testimony, his attorney attempted to ask him why he pled guilty to the sexual offense. The State objected on grounds of collateral estoppel. The trial court sustained the objection.

After Appellant was excused, the State called the children's therapist and the case worker to testify. Cadena testified that both of Appellant's daughters reported that Appellant had sexually assaulted them. She did not testify to the details. The State then rested its case. Appellant was re-called to the stand and his attorney again tried to elicit testimony as to why he pled guilty. The State objected, arguing Appellant could not collaterally attack his prior

8

conviction. Appellant's counsel countered that Cadena's testimony had "opened the door." The trial court disagreed, sustained the State's objection, and excluded the testimony.

Appellant's trial counsel subsequently offered the testimony via a bill of exception. Appellant testified that he never sexually abused either of his daughters. He pled guilty because of his prior felony convictions and because his defense counsel told him he was looking at fifteen years because of his past criminal history. Appellant also testified that after he was arrested in June, "everything fell apart." He wanted to get out as quickly as he could so that he could do whatever he needed to do to keep the family together.

### *Standard of Review*

Appellant contends the trial court committed "plain error" by excluding his testimony and that the trial court's ruling "likely resulted in prejudice." We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007)(per curiam); *In re C.R.*, 263 S.W.3d 368, 370 (Tex.App.--Dallas 2008, no pet.). Evidentiary questions fall within the trial court's discretion, and the trial court's ruling will not be subject to reversal unless a clear abuse of discretion is shown. *Perryman v. State*, 798 S.W.2d 326, 329 (Tex.App.--Dallas 1990, no pet.); *Werner v. State*, 711 S.W.2d 639, 643 (Tex.Crim.App. 1986); *see also Jackson v. State*, 575 S.W.2d 567, 570 (Tex.Crim.App. 1979) "When a ruling excludes evidence, to preserve error the appellant must have made the substance of the evidence known to the trial court through an offer of proof, unless the substance of the evidence was apparent from the context within which the question was asked." *In re Commitment of Day*, 342 S.W.3d 193, 199 (Tex.App.--Beaumont 2011, pet. denied). "To properly pass on the question of the exclusion of testimony, the record should indicate the questions that would have been asked, what the answers would have been and what

9

was expected to be proved by those answers." *Lopez v. Southern Pacific Transportation Company*, 847 S.W.2d 330, 336 (Tex.App.--El Paso 1993, no writ).

## *Analysis*

At the termination hearing, Appellant tried to deny that he ever committed the sexual offense and to offer reasons for his guilty plea. "A collateral attack is an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against." *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005). A guilty plea collaterally estops the convicted party from relitigating his guilt because, "a valid guilty plea serves as a full and fair litigation of the facts necessary to establish the elements of the crime." *Johnston v. American Medical International*, 36 S.W.3d 572, 576 (Tex.App.--Tyler 2000, pet. denied), *quoting State Farm Fire & Cas. Co. v. Fullerton*, 118 F.3d 374, 378, 384 (5th Cir. 1997)(internal quotations omitted).

Appellant directs our attention to *In the Interest of S.J.G.*, 124 S.W.3d 237 (Tex.App.--Fort Worth 2003, pet. denied) and *In the Interest of A.H.L., III,* 214 S.W.3d 45, 56 (Tex.App.--El Paso 2006, pet. denied). In *In re S.J.G.*, the defendant pled guilty to sexually assaulting his four-year-old daughter and was sentenced to thirty-five years' imprisonment. 124 S.W.3d at 240. The State filed a petition to terminate the parent-child relationship between the defendant and S.J.G. *Id*. At the termination hearing, an investigator with TDPRS testified in detail regarding an outcry statement the child made about the sexual assault. *Id*. at 245. The detective who interviewed the defendant testified that the defendant had confessed to the assault in detail, saying things such as, "that he had put his penis in S.J.G.'s mouth ten times or less and put his finger in her anus on at least two occasions," that during " the three-month period in which

10

S.J.G. lived with him, he had sexually assaulted her eight times," and that he committed the abuse because "he just could not overcome his urges." *Id*. The defendant claimed he was fooled into pleading guilty and denied ever sexually assaulting S.J.G. *Id*. He was drunk when he confessed to the police and did not remember the entire conversation. *Id*. Based on the defendant's guilty plea, his confession, and other evidence, the trial court terminated his parental rights. *Id*. at 240. The order specified that termination was appropriate under Section 161.001 (1)(D), (E), (L), and (Q). *Id*. at 239. The father appealed and challenged the factual sufficiency of the evidence to sustain the court's findings. *Id*. at 244. The court of appeals found the evidence sufficient to prove that he "knowingly placed S.J.G. in conditions or surroundings that endangered her physical and emotional well-being and that [he] engaged in conduct that endangered S.J.G.'s physical or emotional well-being." *Id., citing* TEX.FAM.CODE ANN. § 161.001(1)(D), (E). The court did not address whether the evidence was sufficient to sustain the other two grounds, nor was it asked to determine (1) the admissibility of the defendant's testimony denying that he committed the offense, or (2) whether a defendant is permitted to collaterally attack a final conviction. *See In re A.H.L., III*, 214 S.W.3d at 55. There, the appellant argued that the trial court erred by failing to provide him an evidentiary hearing based on his contention that his counsel was ineffective for failing to collaterally attack his aggravated assault conviction. *Id*. at 55-56. In support of his claim, the appellant cited to *S.J.G.* This court responded simply:

> We find the case distinguishable. In the absence of any other authority permitting [the appellant] to collaterally attack his final conviction, we conclude that [the appellant] was not entitled to an evidentiary hearing on this allegation.

*Id*.

11

Appellant's guilt had already been determined in the prior criminal proceeding. Therefore, the issue of Appellant's guilt could not be relitigated, regardless of the reasons for his guilty plea. Finding no abuse of discretion, we overrule Issue One. *See Johnston*, 36 S.W.3d at 576.

## SUFFICIENCY OF THE EVIDENCE TO SUPPORT TERMINATION UNDER TEXAS FAMILY CODE SECTION 161.001(1)(L)(iv)

The trial court ordered termination of Appellant's parental rights based in part on a finding that the State proved, by clear and convincing evidence, that termination was appropriate under Texas Family Code Section 161.001(1)(L)(iv). Section 161.001(L)(iv) provides as follows:

> The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence:
>
> (1) that the parent has:
>
> .    .    .
>
> (L) been convicted or has been placed on community supervision, including deferred adjudication community supervision, for being criminally responsible for the death or serious injury of a child under the following sections of the Penal Code or adjudicated under Title 3 *for conduct that caused the death or serious injury of a child* and that would constitute a violation of one of the following Penal Code sections:
>
> .    .    .
>
> (iv) Section 21.11 (indecency with a child);

[Emphasis added]. TEX.FAM.CODE ANN. § 161.001(1)(L)(iv).

In Issue Two, Appellant contends that there is no evidence or factually insufficient evidence to terminate his parental rights under Section 161.001(1)(L)(iv) of the Texas Family Code. On appeal, Appellant does not challenge the sufficiency of the evidence to prove he was placed on deferred adjudication community supervision for the offense of indecency with a

12

child.[4]  Rather, Appellant contends there is no evidence, or insufficient evidence, to prove that his conduct "caused the death or serious injury of a child," as required under subsection (L).

Few cases address what constitutes "serious death or injury" as required by Section 161.001(1)(L).  In his brief, Appellant relies heavily on *Vidaurri v. Ensey*, 58 S.W.3d 142 (Tex.App.--Amarillo 2001, no pet.).  There, the Enseys filed a petition to terminate Vidaurri's parental rights to his biological son and sought a judgment permitting them to adopt the child.  *Vidaurri*, 58 S.W.3d at 144.  Although the petition alleged several grounds for termination, the trial court ordered termination under ground (L)(iv), based on Vidaurri's conviction for indecency with his stepdaughter.[5]  *Id*. at 144-145.  Specifically, the trial court found by clear and convincing evidence that Vidaurri "had been placed on deferred adjudication community supervision for being criminally responsible for the death or serious injury of a child under section 21.11 of the Texas Penal Code."  *Id*. at 144. (internal quotations omitted).  Vidaurri alleged that the Enseys failed to prove the "death or serious injury of a child" element under Texas Family Code Section 161.001(1)(L)(iv).  *Id*.  The appellate court agreed, finding no evidence of serious injury of a child.[6]  *Id*.  (stating that "analysis leads us to conclude that the

---

[4]  The evidence in the record includes the indictment which charges Appellant with intentionally or knowingly engaging in sexual contact with his daughter by touching her genitals.  The record also includes a copy of the final judgment and conviction for the offense.  Therefore, the evidence clearly demonstrates that Appellant pled guilty to the offense of indecency with a child and was placed on deferred adjudication community supervision for that offense.  We also note that the indictment and final judgment ordering deferred adjudication were admitted into evidence without objection.

[5]  Vidaurri pled guilty to charges of sexual indecency with his stepdaughter and was granted deferred adjudication community supervision.  *Vidaurri*, 58 S.W.3d at 144-145.  He was later adjudicated guilty and imprisoned.  *Id*. at 145.  At the time of the appeal, *Vidaurri*, had filed a writ of habeas corpus attacking his original guilty plea.  *Id*.

[6]  The appellate court rejected the trial court's finding of fact that Vidaurri had been placed on deferred adjudication community supervision for being criminally responsible for serious injury to a child.  *Vidaurri*, 58 S.W.3d at 146 (holding that the trial court's finding, "is not in and of itself evidence that Vidaurri was criminally responsible for serious injury to a child."  *Id*. at 147.  The court similarly rejected evidence of an order prohibiting Vidaurri from contacting his stepdaughter.  *Vidaurri*, 58 S.W.3d at 147 ("nothing before us indicates that the only reason why such a condition could be imposed is because he seriously injured a child while committing the indecency").  The confession could not be considered because Vidaurri did not confess but instead invoked his Fifth Amendment right against self-incrimination.  *Id*. at 146; 147.  Even had he done so, "the only way that the confession itself could be

foregoing indicia, whether considered collectively or separately, fall short of constituting a scintilla of evidence, much less some evidence, of serious injury.").

While the Texas Supreme Court has not directly addressed the issue, it has commented on it. *See In the Interest of L.S.R.*, 92 S.W.3d 529 (Tex. 2002)(per curiam); In *In the Interest of L.S.R.*, 60 S.W.3d 376 (Tex.App.--Fort Worth 2001, pet. denied), the appellant challenged the legal sufficiency of the evidence to terminate his parental rights under Section 161.001(1)(L)(iv) of the Texas Family Code. The evidence at trial demonstrated that he had received deferred adjudication for the offense of indecency with a child, and that the offense occurred when he was sixteen and the victim (his cousin) was four years old. *Id*. The court of appeals recounted that appellant was treated for pedophilia. *Id*. The court concluded:

> While the conviction might be sufficient evidence of death or injury in those cases where death or serious injury to the child is an element of the offense, we hold that where death or serious injury is not an element of the offense, the conviction or deferred adjudication is not by itself sufficient evidence to support termination under section 161.001(1)(L)(iv).

*Id*. at 379. Although the Supreme Court denied the petition for review, it issued the following *per curiam* statement:

> J.R. and L.R. appeal a judgment terminating their parental rights to their daughter, L.S.R. Section 161.001(1)(L)(iv) of the Texas Family Code provides for termination if a parent has been convicted or placed on community supervision, including deferred adjudication community supervision, 'for being criminally responsible for the death or serious injury of a child' under various Penal Code sections, including a conviction for indecency with a child under Section 21.11 of the Penal Code. The State presented evidence at trial showing that J.R. had received deferred adjudication for the offense of indecency with a child, an

---

some evidence of having seriously injured [his stepdaughter] would be if such injury were implicit in the offense of indecency with a child." *Id*. at 147. The court was unwilling to hold that serious injury was implicit in the offense and therefore concluded that Vidaurri's non-confession "in and of itself constitutes no evidence of serious injury."

> [T]he effect, if any, of the incident upon her physical or mental condition went unaddressed at trial. Similarly absent is any testimony, expert or otherwise, suggesting that one who has been the victim of an indecency within the ambit of § 21.11 necessarily suffers any injury, serious or otherwise.

*Id*.

offense J.R. committed against his four-year-old cousin when he was sixteen. The court of appeals held that there was no evidence to support termination under Section 161.001(1)(L)(iv) because there had been 'no showing that J.R.'s cousin suffered death or serious injury as a result of his conduct.' The court of appeals deleted this ground for termination from the judgment, but otherwise affirmed the judgment against J.R.

We deny the petitions for review, ***but disavow any suggestion that molestation of a four-year-old, or indecency with a child, generally, does not cause serious injury***. [Emphasis added].

*In re L.S.R.*, 92 S.W.3d at 529. (Internal citations and quotations omitted).

*Application and Analysis*

Here, the record contains expert testimony from the child's therapist. Cadena is a licensed clinical therapist who began providing therapy sessions for five of the six children upon their removal in September 2009. She continued to provide therapy at the time of trial.[7] She testified that Child C suffered from severe anxiety issues. The child requires medication, suffers from enuresis and encopresis, and has been treated in a mental hospital. Child C does not want to see her father and has expressed anger toward him, as well as fear about returning to her prior living environment. While what constitutes "serious injury" in this context has not been specifically defined, the injuries suffered by this child certainly support a finding that she suffered serious injury.

Appellant complains that this testimony did not make a causal connection between the sexual abuse and the child's hospitalization. We disagree. While Cadena may not have specifically attributed all of Child C's problems to the sexual abuse, she did testify that sexual abuse was a factor. Appellant cites no authority, and we have found none, suggesting that sexual indecency must be the sole cause of serious injury. Considering all evidence in a light favorable to judgment, we find the evidence legally sufficient to support, by clear and convincing evidence, a determination that Child C suffered serious injury as a result of Appellant's indecent conduct. Likewise, in light of the entire record, we find that evidence which a reasonable fact finder could not have credited in favor of the finding is not so significant as to prevent the fact finder from forming a firm belief or conviction regarding the finding of serious injury. Accordingly, the evidence factually is sufficient. We overrule Issue Two.

---

[7] In addition to her testimony, Cadena's records from her therapy sessions with the children were admitted into evidence without objection.

**BEST INTEREST OF THE CHILDREN**

In Issue Three, Appellant challenges the sufficiency of the evidence to support the trial court's best interest finding under Section 161.001(2). There is a strong presumption that a child's best interests are served by maintaining the parent-child relationship. *In the Interest of L.M.*, 104 S.W.3d 642, 647 (Tex.App.--Houston [1st Dist.] 2003, no pet.). The Supreme Court has set forth a list of non-exclusive factors which can be used to determine a child's best interests. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). The determination of a child's best interest does not require proof of any unique set of factors, and it does not limit proof to any specific factors. *Id*. Under *Holley*, in reviewing the sufficiency of the evidence to support a best-interest finding, courts may consider (1) the desires of the child, (2) the present and future physical and emotional needs of the child, (3) the present and future emotional and physical danger to the child, (4) the parental abilities of the persons seeking custody in promoting the best interest of the child, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by the individuals or agency seeking custody, (7) the stability of the home or proposed placement, (8) acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate, and (9) any excuse for the parent's acts or omissions. *Id*. The same evidence of acts or omissions used to establish grounds for termination under Section 161.001(1) may be probative in determining the best interests of the child. *In re C.H.*, 89 S.W.3d at 28; *In re L.M.*, 104 S.W.3d at 647. Termination of the parent-child relationship is not justified when the evidence shows merely that a parent's failure to provide a more desirable degree of care and support of the child is due solely to misfortune or the lack of intelligence or training, and not to indifference or malice. *Clark v. Dearen*, 715 S.W.2d 364, 367 (Tex.App.--Houston [1st Dist.] 1986, no writ).

17

Turning to the *Holley* factors, the children's therapist testified that the two girls do not want to even see their father, and Children B, C, and D were fearful of returning to their father and the same environment they experienced before TDFPS removed them. The children were doing well, "moving forward," and have a "positive outlook for the future." The case worker testified that the five youngest children were all placed together in a foster care with the World for Children. These children were excited about being adopted. Child A is willing to be adopted, but only by a family member. He is the only child to express any interest in seeing Appellant.

"The goal of establishing a stable, permanent home for a child is a compelling state interest." *See Walker v. Texas Department of Family and Protective Services*, 312 S.W.3d 608, 616-17 (Tex.App.--Houston [1st Dist.] 2009, pet. denied), *citing In re C.E.K.*, 214 S.W.3d 492, 498 (Tex.App.--Dallas 2006, no pet.). Prior to removal, it could hardly be said that Appellant provided the children with a stable, permanent, or sanitary home. They were forced to move frequently, often living in roach infested motels. They were exposed to drug use and domestic violence. Child E tested positive for cocaine. The children also expressed fear about returning to their parents because they remembered not having enough food to eat.

With respect to emotional needs, the evidence clearly showed that the children expressed anger toward their father. Several of the children had emotional problems, including severe anxiety, and required medication. Three of the children suffered from enuresis and encopresis up until about three months before trial. Both girls told their therapist they had been sexually abused by Appellant. They were afraid of him and did not want to see him. While Cadena did not relate the specifics regarding the abuse at trial, she did testify that both girls recounted the abuse to her in detail. The girls' stories never changed and Cadena believed they both were

18

telling the truth. We also note that, in addition to the evidence above, the evidence discussed in support of the trial court's finding under Section 161.001(1)(L)(iv) is also probative of a finding as to danger in determining the child's best interest. *See In re C.H.*, 89 S.W.3d at 28.

Appellant contends he met the physical and emotional needs of the children. He focuses on the fact that he paid child support, complied with his service plan, and regularly visited his children before he was incarcerated. The fact finder was free to weigh the evidence of Appellant's past conduct with any evidence of his current or potential future conduct. In so doing, it could have reasonably found Appellant's past conduct indicative of his inability to meet the children's physical and emotional needs in the future. *See In the Interest of T.G.*, No. 14-09-00299-CV, 2010 WL 1379977, at *9 (Tex.App.--Houston [14th Dist.] Apr. 8, 2010, no pet.).

There is evidence in the record that Appellant behaved appropriately during his visits with his oldest son. But Appellant's prior history of drug abuse and domestic violence, as well as his conviction for sexual abuse of his daughter, show a lack of parental ability. Under the terms of his probation, Appellant cannot have the children placed with him.

Appellant also maintains that he engaged in services prior to his arrest, continued therapy after his release from jail, was making great strides in therapy, and the therapist had reduced the frequency of sessions. But there is no evidence of programs available to assist him in caring for the children should they be returned, nor does Appellant offer any evidence of programs or assistance which would lift the term of his probation which prevents him from having contact with his children.

The caseworker and the therapist recommended termination of the parent-child relationship because it will provide the children with stability and permanence. The plan for the

19

children was adoption. And despite Appellant's efforts to cite to information focusing on the conduct of the foster parents, none of the information was before the trial court nor is it properly contained in the record of this court.

In light of all of the evidence, the trial court could have reasonably formed a firm belief or conviction that termination of Appellant's parental rights was the best interest of the children. Accordingly, we hold that the evidence is both legally and factually sufficient to support the trial court's finding that termination of Appellant's parental rights was in the best interest of the children. We overrule Issue Three and affirm the trial court's order of termination.


November 8, 2012                           _____
                                          ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

20