

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-13-00325-CV
_____

IN THE INTEREST OF N.M., A CHILD

On Appeal from the 108ᵗʰ District Court
Potter County, Texas
Trial Court No. 82,925-E; Honorable Douglas Woodburn, Presiding

February 21, 2014

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Presenting a sole issue, Appellant, Kaydee,[1] challenges the legal and factual sufficiency of the evidence supporting the grounds for termination found in the trial court's order terminating her parental rights to her daughter, N.M.[2] We affirm.

---

[1] To protect the parents' and child's privacy, we refer to Appellant and other parties by their first names only and to the child by her initials. See TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2013). See also TEX. R. APP. P. 9.8(b).

[2] At the outset, we note the trial court orally pronounced that termination of Kaydee's parental rights was based on section 161.001(1)(D), (E), (L), (M) and (O) and also on section 161.003, which provides for involuntary termination due to a parent's inability to care for a child because of mental or emotional problems. However, the written termination order is based on section 161.001(1)(D), (E), (L), (N) and (O) only. Neither subsection (M) nor section 161.003 is recited in the written order. When there is an inconsistency, the written order controls over a trial court's oral pronouncement. *In re A.C.*, No. 04-

N.M., a female child, was born in September of 2012, to Kaydee and John.[3] The Texas Department of Family and Protective Services took immediate custody of N.M. upon her release from the hospital and placed her with foster parents. The Department cited Kaydee's homelessness[4] and an open conservatorship case involving her two older sons by another father as grounds for the removal.[5] They also cited the fact that Kaydee had a felony conviction for child endangerment related to one of her sons.

Kaydee suffers from a pseudotumor in her optic nerve and receives disability as a result. She also has a brain tumor, suffers from migraines, is bipolar and has issues with anxiety. Her medical condition prevents her from obtaining a driver's license. She is unemployed, does not have a vehicle and has difficulty maintaining a permanent residence. Kaydee and John have domestic violence issues.

The Department filed its original petition requesting termination of the parent-child relationship between Kaydee and N.M. if reunification could not be achieved. All but three grounds enumerated in section 161.001(1) of the Family Code were alleged as reasons for terminating her parental rights. After a hearing, the trial court found that

---

12-00679-CV, 2013 Tex. App. LEXIS 801, at *4 (Tex. App.—San Antonio 2013, pet. denied)(Mem. Op.). Thus, our opinion is tailored to the grounds provided in the written order. *See In re A.S.G.*, 345 S.W.3d 443, 448 (Tex. App.—San Antonio 2011, no pet.).

[3] John, N.M.'s father, whose parental rights were also terminated in the same proceeding, is not a party to this appeal.

[4] John's mother offered Kaydee temporary living arrangements after N.M. was born. While Kaydee expressed an intent to rent an apartment, she never did so.

[5] Kaydee eventually relinquished her parental rights to her two older sons.

termination of Kaydee's parental rights was in N.M.'s best interest. The trial court

further found that Kaydee:

(1) knowingly placed or knowingly allowed N.M. to remain in conditions or surroundings which endangered her physical or emotional well-being;

(2) engaged in conduct or knowingly placed N.M. with persons who engaged in conduct which endangered her physical or emotional well-being;

(3) had been convicted or had been placed on community supervision, including deferred adjudication community supervision, for being criminally responsible for death or serious injury of a child under section 22.041 of the Texas Penal Code (endangering a child);

(4) constructively abandoned N.M. who had been in the permanent or temporary managing conservatorship of the Department or an authorized agency for not less than six months and: (a) the Department or authorized agency had made reasonable efforts to return N.M. to Kaydee; (b) Kaydee had not regularly visited or maintained significant contact with N.M.; and (c) Kaydee had demonstrated an inability to provide N.M. with a safe environment;

(5) failed to comply with the provisions of a court order that specifically established the actions necessary for Kaydee to obtain N.M.'s return who had been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of N.M.'s removal from the parent under chapter 262 for abuse and neglect.

See TEX. FAM. CODE ANN. § 161.001(1)(D), (E), (L), (N), (O) and (2) (West Supp. 2013).

## STANDARD OF REVIEW IN TERMINATION CASES

The natural right existing between parents and their children is of constitutional

dimension. *See Santosky v. Kramer*, 455 U.S. 745, 758-59 (1982). *See also Holick v.

Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination proceedings are

strictly construed in favor of the parent. *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012).

Parental rights, however, are not absolute, and it is essential that the emotional and

3

physical interests of a child not be sacrificed merely to preserve those rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *See In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *See* Tex. Fam. Code Ann. § 101.007 (West 2008). *See also In re C.H.,* 89 S.W.3d at 25-26.

In applying the clear and convincing standard onto our legal sufficiency standard, we review the evidence by considering all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re E.N.C.,* 384 S.W.3d at 802 (citing *In re J.F.C.,* 96 S.W.3d at 266). To give appropriate deference to the factfinder's conclusions, we must assume the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *Id.* An appellate court should also disregard all evidence that does not support the finding. *Id.* If, after conducting a legal sufficiency review, a court determines that no reasonable fact finder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally insufficient. *Id.*

In a factual sufficiency review, a court of appeals must give due consideration to the evidence the fact finder could reasonably have found to be clear and convincing. *In*

4

*re C.H.*, 98 S.W.3d at 25. We determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* In doing so we consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.F.C.*, 96 S.W.3d at 266.

The Family Code permits a trial court to terminate parental rights if the Department proves by clear and convincing evidence that the parent committed an action prohibited under section 161.001(1) and termination is in the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001(1), (2) (West Supp. 2013); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976).

Only one predicate finding under section 161.001(1) is necessary to support an order of termination so long as there is also a finding that termination is in a child's best interest. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re T.N.*, 180 S.W.3d 376, 384 (Tex. App.—Amarillo 2005, no pet.). Therefore, we will affirm the termination order if the evidence is both legally and factually sufficient to support any statutory ground upon which the trial court relied in terminating parental rights as well as the best interest finding. *In re E.A.G.*, 373 S.W.3d 129fact finder, 141 (Tex. App.—San Antonio 2012, pet. denied).

Kaydee asserts the trial court erroneously terminated her parental rights because the evidence was legally and factually insufficient to support any of the grounds found by the trial court. We disagree.

Although only one predicate finding under section 161.001(1) is necessary to support an order of termination, in the interest of justice, we will examine each ground relied upon by the trial court to support its order of termination.

## § 161.001(1)(D)

Under section 161.001(1)(D), parental rights may be terminated when clear and convincing evidence shows that a parent knowingly placed or knowingly allowed a child to remain in conditions or surroundings that endanger the physical or emotional well-being of the child. We examine the time before the child's removal to determine whether the environment itself posed a danger to the child's physical or emotional well-being. *Ybarra v. Tex. Dep't of Human Services*, 869 S.W.2d 574, 577 (Tex. App.—Corpus Christi 1993, no writ). Although the focus of subsection (D) is on the child's living environment and not on the parent's conduct, parental conduct may produce an endangering environment. *See In re D.T.*, 34 S.W.3d 625, 633 (Tex. App.—Fort Worth 2000, pet. denied). *See also In re B.R.*, 822 S.W.2d 103, 105-06 (Tex. App.—Tyler 1991, writ denied) (citing *In re L.S.*, 748 S.W.2d 571 (Tex. App.—Amarillo 1988, no writ)). Subsection (D) requires a showing that the environment in which the child is placed endangered the child's physical or emotional health. *Doyle v. Texas Dep't of Protective and Regulatory Serv.*, 16 S.W.3d 390, 395 (Tex. App.—El Paso 2000, pet.

6

denied). Additionally, subsection (D) permits termination based on a single act or omission by the parent. *In re L.C.*, 145 S.W.3d 790, 796 (Tex. App.—Texarkana 2004, no pet.).

N.M. was removed from Kaydee in the hospital when she was three days old and was placed with foster parents chosen by the Department. N.M.'s "conditions or surroundings" were dictated by the Department at all times relevant to the underlying proceeding. Accordingly, we conclude the evidence is both legally and factually insufficient to show Kaydee knowingly placed or knowingly allowed N.M. to remain in conditions or surroundings which endangered her physical or emotional well-being. *See In re J.O.A.*, 262 S.W.3d 7, 24 (Tex. App.—Amarillo 2008), *aff'd as modified and remanded*, 283 S.W.3d 336 (Tex. 2009).

## § 161.001(1)(E)

Parental rights may be terminated under subsection (E) if there is clear and convincing evidence that the parent engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. The cause of the danger to the child must be the parent's conduct alone, as evidenced not only by the parent's actions but also by the parent's omission or failure to act. *Doyle*, 16 S.W.3d at 395. Additionally, subsection (E) requires more than a single act or omission; a voluntary, deliberate, and conscious "course of conduct" by the parent is required. *In re D.T.,* 34 S.W.3d at 634. "Endanger" means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996), (citing *Texas Dep't of*

7

*Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). *See also In re T.N.*, 180 S.W.3d at 383. Endangering conduct may include the parent's actions before the child's birth, while the parent had custody of older children. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009).

Kaydee testified that before N.M. was born, she and the father of her sons got into an argument. It escalated into physical violence which caused a bassinet holding her three-month-old son to tip over. Although she could not recall the details—she was on Prozac—the son's father must have picked him up, and she lunged at him just as the police tackled and handcuffed her. The incident led to a conviction for child endangerment for which she was placed on community supervision for four years. The State moved to revoke her, and she pled true to drinking while pregnant. However, instead of revoking her community supervision, the trial court ordered her to serve some time in jail and extended her community supervision for a year. We conclude from this that there is legally and factually sufficient evidence of endangerment upon which a reasonable fact finder could have formed a firm belief or conviction to support termination under subsection (E). *Id.* at 346.

**§ 161.001(1)(L)**

Parental rights may be terminated if a parent has been convicted or placed on community supervision, including deferred adjudication community supervision, for being criminally responsible for serious injury of a child under section 22.041 of the Texas Penal Code for abandoning or endangering a child. In the context of subsection (L), "serious" means having important or dangerous possible consequences and "injury"

8

means hurt, damage or loss sustained. *In re A.L.*, 389 S.W.3d 896, 900-01 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

Section 22.041(c) provides, "[a] person commits [the offense of child endangerment] if he intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that places a child younger than 15 years in imminent danger of death, bodily injury, or physical or mental impairment." "Serious injury" is not an element of child endangerment. *See In re L.S.R.*, 60 S.W.3d 376, 379 (Tex. App.—Fort Worth 2001), *pet. denied*, 92 S.W.3d 529 (Tex. 2002), *disapproved in part*, *In re J.F.C.*, 96 S.W.3d at 267 (holding that where death or serious injury is not an element of the offense, the conviction or deferred adjudication is not by itself sufficient evidence to support termination under section 161.001(1)(L)(iv)). *See also Vidaurri v. Ensey*, 58 S.W.3d 142, 145-48 (Tex. App.—Amarillo 2001, no pet.) (reversing termination order based on Viduarri's conviction for indecency with a child because offense itself was not evidence of "serious injury").

Kaydee testified to the details leading to her arrest and conviction for child endangerment. However, no evidence was presented that her son suffered any injury, and certainly no evidence of "serious" injury. Neither was the judgment of conviction offered into evidence. We conclude Kaydee's admission of her conviction is legally sufficient evidence to support termination under subsection (L); however, the evidence is factually insufficient to show she caused serious injury to her son to support termination under subsection (L).

9

## § 161.001(1)(N)

Parental rights may be terminated if the trial court finds that a parent has constructively abandoned a child who has been in the permanent or temporary conservatorship of the Department for not less than six months and reasonable efforts have been made to return the child; the parent has not regularly visited or maintained significant contact with the child; and the parent has demonstrated an inability to provide the child with a safe environment. *See In re D.T.*, 34 S.W.3d at 633.

Although this ground is recited in the written order, it was not orally pronounced by the trial court. Kaydee has not addressed (N) in her brief. Consequently, any argument under (N) is waived. *See* TEX. R. APP. P. 38.1(i). *See also Sunnyside Feedyard v. Metropolitan Life Ins. Co.*, 106 S.W.3d 169, 173 (Tex. App.—Amarillo 2003, no pet.). This waiver notwithstanding, because the trial court did not orally pronounce section 161.001(1)(N) as a ground for termination, we do not rely upon it to support the order of termination.

## § 161.001(1)(O)

Parental rights may be terminated under section 161.001(1)(O) if the Department establishes the child was removed under chapter 262 because of abuse or neglect; the Department has been the permanent or temporary managing conservator for at least nine months; a court order specifically established the actions necessary for the parent to obtain the return of the child; and the parent failed to comply with that order. *See In re J.F.C.*, 96 S.W.3d at 278-79. The Supreme Court has broadened the "abuse or neglect" elements to include risks or threats of the environment in which the child is

10

placed. *See In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013) (holding that a reviewing court may examine a parent's history with other children as a factor of the risks or threats of another child's environment). *See also In re K.N.D.*, No. 13-0257, 2014 Tex. LEXIS 40, at *2 (Tex. Jan. 17, 2014). Termination under subsection (O) does not allow for consideration of excuses for noncompliance nor does it consider "substantial compliance" to be the same as completion. *See In re I.G.*, 383 S.W.3d 763, 771 (Tex. App.—Amarillo 2012, no pet.); *In re M.C.G.*, 329 S.W.3d 674, 675-76 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

N.M. was removed from her parents immediately after her birth and although there was no abuse or neglect towards her directly, a risk or threat of abuse or neglect given Kaydee's history with her two older sons was sufficient for the Department to remove the child. N.M. was in the Department's care for at least nine months, and a court order existed outlining the Department's Family Service Plan for Kaydee to follow in order to be reunited with N.M. The plan was approved and signed by Kaydee. One of the terms of the plan was for Kaydee to avoid contact with "inappropriate" persons. The Department sought to establish that Kaydee's contact with N.M.'s father and others violated that term of the plan. While the trial court expressed great concern over the vagueness of this condition, the caseworker explained she does not tell her clients with whom to associate. Instead, during sessions, she questions her client's associations with certain individuals and then has the client evaluate whether that particular individual is an appropriate person to be around the child. The case worker explained how this process allows the parent to begin making responsible choices.

The testimony established that Kaydee has made many improvements during the three years of involvement with the Department dating back to her two older sons. However, the testimony also established that despite all her good intentions and three years of working services, Kaydee had difficulty implementing the changes necessary for reunification with N.M.

She passed her parenting class, obtained her General Equivalency Diploma, attended counseling sessions, passed drug tests, signed all required releases and attempted to make the scheduled visits with N.M.[6] These great strides notwithstanding, she did not fulfill all the terms and conditions of her community supervision, which was a requirement of her service plan. Specifically, she was behind in her community service hours and slightly behind in her payments. She lived at eight different addresses since N.M.'s removal. While she was able to survive on a $750 disability check, she struggled to find employment with her felony conviction. Even though her family lived out-of-state, she did have contact with a brother, although he had drug-related issues. She had a good friend who runs a home day care who testified she would help babysit and care for N.M. Otherwise, she had no support system to help her care for N.M. In the eyes of the law, her substantial compliance is insufficient to defeat termination under subsection (O). Because we conclude the Department presented clear and convincing evidence that Kaydee did not fully comply with the Family Service Plan as required to obtain the return of N.M, we find the evidence was legally and factually sufficient to support termination.

---

[6] Even though Kaydee's visits with N.M. included numerous "no shows," she did make an effort to visit regularly. In August 2013, she developed strep throat and was not allowed to continue visits without a doctor's note clearing her. She never obtained a doctor's note to resume visits, and her last visit with N.M. was on August 6th, almost seven weeks before the final hearing.

## § 161.001(2) BEST INTEREST

Notwithstanding the sufficiency of the evidence to support termination under section 161.001(1), we must also find clear and convincing evidence that termination of the parent-child relationship was in N.M.'s best interest. *See* § 161.001(2). Evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See In re C.H.*, 89 S.W.3d at 28. A non-exhaustive list of factors to consider in deciding best interest is found at section 263.307(b) of the Family Code. *See Holley*, 544 S.W.2d at 371-72.

Kaydee does not challenge the trial court's best interest finding. Consequently, we must uphold the trial court's termination order based on subsections (E) and (O) which are supported by clear and convincing evidence. *See In re A.V.*, 113 S.W.3d at 362. *See also In re E.A.G.*, 373 S.W.3d at 141.

## CONCLUSION

Accordingly, the trial court's order terminating Kaydee's parental rights is affirmed.

Patrick A. Pirtle
Justice