

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-18-00439-CV
No. 07-18-00440-CV

IN THE INTEREST OF C.A., A CHILD
IN THE INTEREST OF Z.N., A CHILD

On Appeal from the 320th District Court
Potter County, Texas
Trial Court No. 90352-D-FM and 77,106-D, Honorable Carry Baker, Presiding

June 6, 2019

## OPINION

Before QUINN, C.J., and CAMPBELL and PARKER, JJ.

In separate cases, appellee the Texas Department of Family and Protective Services sought termination of parental rights to two children. The cases were tried together. V.S. ("the mother") is the mother of C.A., age five at the final hearing, and Z.N., then age ten. Her parental rights to C.A. were terminated, and she appeals in case number 07-18-00439-CV.[1] The mother's parental rights to Z.N., and those of Z.N.'s father

---

[1] C.T.A. is the biological father of C.A. His parental rights to that child also were terminated, but he did not appeal.

S.N., also were terminated, and both parents appeal in case number 07-18-00440-CV. We will affirm the final orders terminating the mother's parental rights to C.A. and Z.N. but will reverse and remand for a new trial the final order terminating the parental rights of S.N.[2]

## Background

A Department investigator testified at final hearing she received a report concerning the mother's suspected drug use in April 2017. At the time C.T.A. was in jail on an unspecified charge while S.N. was in prison, serving three concurrent ten-year sentences for indecency with a child.

A drug screen was requested of the mother but she did not comply at first. In June 2017, the mother submitted to drug testing; the results were positive for methamphetamine and amphetamine. At the same time, C.T.A. tested positive for marijuana and C.A. tested positive for methamphetamine.

On behalf of C.A. and Z.N. the Department filed the suits affecting the parent-child relationships in July 2017. The children were removed, and the Department was appointed temporary sole managing conservator of both children.

The Department prepared a plan of services for the mother and S.N. to obtain the return of Z.N. and C.A. The Department caseworker handling the cases testified at final hearing that she sent S.N.'s service plan to him in prison. The parties do not dispute that

---

[2] We use these designations for the parents and children to protect the privacy of the children. *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2018); TEX. R. APP. P. 9.8(b).

2

their service-plan obligations were made orders of the court. On appeal, the mother does not challenge the trial court's implicit finding that she did not comply with the requirements of her service plan.

The final hearing was to the bench in November 2018. The mother was present and testified in her case-in-chief. Some two months before final hearing S.N. was released from prison and moved to Dallas. He did not appear at final hearing but was represented by counsel.

In testimony, the Department's caseworker recommended termination of the parental rights of the mother and S.N. and expressed the opinion that decision would be in the children's best interest. Leigh Sexton, LPC, was a counselor for the children. In her testimony, she recommended C.A. not be returned to the mother, noting drug use, instability, and the mother's apparent failure to address C.A.'s outcries of sexual abuse. The mother asked the court in testimony not to terminate her parental rights to the children but to name the Department their permanent managing conservator. She agreed with her attorney "that as time progresses . . . you can get more both sobriety and stability, that you can become a more effective part of your children's life." The children's attorney ad litem and guardian ad litem asked the court to terminate the parental rights of the mother and S.N. so that the children could be adopted by their foster parents.

**Analysis**

**I. Legal Background**

The Texas Family Code permits a trial court to terminate parental rights if the Department proves by clear and convincing evidence that the parent committed an action

prohibited under section 161.001(b)(1) and termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(b)(1),(2) (West Supp. 2018). In such cases, due process requires adherence to the clear and convincing evidence standard of proof. *In re N.G.,* No. 18-0508, 2019 Tex. LEXIS 465, at *8 (Tex. May 17, 2019) (per curiam). "Clear and convincing evidence" is that "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* (quoting TEX. FAM. CODE ANN. § 101.007).

Appellants' issues challenge the legal and factual sufficiency of the evidence supporting provisions of the final orders. Under the legal sufficiency analysis, a reviewing court examines all of the evidence in the light most favorable to the challenged finding, assuming the "factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002). The court disregards all contrary evidence the factfinder could have reasonably disbelieved or found incredible. *Id.* But, it takes into account undisputed facts that do not support the finding, so as not to "skew the analysis of whether there is clear and convincing evidence." *Id.* If the record presents credibility issues, the reviewing court must defer to the factfinder's determinations provided they are not unreasonable. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005).

In a factual sufficiency review, a court of appeals must give due consideration to the evidence the factfinder could reasonably have found to be clear and convincing. *In re C.H.,* 89 S.W.3d 17, 25 (Tex. 2002). The court determines whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* In doing so the court of appeals considers whether

4

disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.F.C.,* 96 S.W.3d at 266.

## II. The Department's cases against the mother:

### *In re C.A.,* 07-18-00439-CV & *In re Z.N.,* 07-18-00440-CV

The mother raises one issue in each case. She contends the evidence was legally and factually insufficient to support the trial court's findings that termination of her parental rights was in the best interest of the children. She does not challenge the court's findings of the predicate grounds she engaged in endangering conduct under subsections 161.001(b)(1)(D) and (E); had her parental relationship to another child terminated on endangerment grounds; did not comply with a court order specifying the actions necessary for return of the children; and endangered the children through use of a controlled substance and did not complete a court-ordered treatment program. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D),(E),(M),(O),&(P).

To assess the trial court's best-interest determination, we may consider the factors itemized in *Holley v. Adams,* 544 S.W.2d 367 (Tex. 1976).[3] While the *Holley* "listing is by

---

[3] The *Holley* factors are: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interests of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent

5

no means exhaustive, [it] does indicate a number of considerations which either have been or would appear to be pertinent." *Holley,* 544 S.W.2d at 372.[4] "The absence of evidence about some of these considerations would not preclude a fact-finder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *In re C.H.,* 89 S.W.3d at 27. In some circumstances, evidence of even one *Holley* factor may be sufficient. *Jordan v. Dossey,* 325 S.W.3d 700, 729 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (citing *In re C.H.*, 89 S.W.3d at 27).

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d at 116. But prompt and permanent placement of a child in a safe environment also is presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (West Supp. 2018). The best interest analysis evaluates the best interest of the child, not that of the parent. *In re A.C.B.,* 198 S.W.3d 294, 298 (Tex. App.—Amarillo 2006, no pet.).

The mother's plan of services required, among other things, that she abstain from the use of illegal drugs and submit to random drug testing. Evidence showed the mother

---

which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley,* 544 S.W.2d at 371-72.

[4] *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (citing Family Code section 263.307 ["Factors in Determining Best Interest of Child"] and *Holley* as providing factors for consideration "when determining whether termination of parental rights is in the best interest of the child" and also referencing Family Code section 153.131(b) which provides "a strong presumption that the best interest of a child is served by keeping the child with a parent").

did not participate in required drug testing to the degree directed. Documentary evidence showed the mother tested positive for methamphetamine and amphetamines in May 2018. A July 2018 hair strand test was also positive for these substances although a urinalysis was negative. The mother admitted in testimony that she last used methamphetamine some two months before the November final hearing. She pointed to "personal issues" that left her "a little down" and association with "the wrong people" as reasons why she used drugs "off and on" during the cases.

The mother was also required to maintain stable and appropriate employment. The record indicates the mother was largely unemployed during the pendency of the case until four months before the final hearing, and that she worked only twelve to fifteen hours per week after she obtained employment.

There was evidence that during the pendency of the case the mother did not locate and maintain stable housing, as the plan of services required. The mother testified she lived "off and on" with a friend, lived in a motel for about two months, and for a few weeks stayed with her NA/AA sponsor. She said that before the children's removal, while C.T.A. was in jail, she and the children lived with another person.

When Sexton began counseling C.A., the child was age three and turned four before the sessions were completed. Sexton testified C.A. made an outcry to her foster parents of physical abuse by C.T.A. Thereafter, in September 2017, she made an outcry to Sexton of sexual abuse by C.T.A. C.A. made a further outcry of sexual abuse by C.T.A.

7

in November 2017.[5] At that time she also made an outcry of sexual abuse by her half-brother, Z.N. According to Sexton, C.A. told the mother about the abuse but the mother took no action. In Sexton's opinion C.A. "is a hyper-sexualized child, due to things that have happened, and she does not have a boundary when it comes to sexual behavior."

The caseworker testified C.A. and Z.N. were placed together in a foster home and were doing "[r]eally well." Later in her testimony she indicated the foster parents wanted to adopt the children. C.A. told the caseworker she was happy with the foster placement. The caseworker testified Z.N. is bonded with his maternal grandfather and enjoys time with him, but Z.N. likes his foster home and school and is doing well in the placement. Sexton testified C.A. and Z.N. likely could be placed together satisfactorily if they are closely supervised and are not allowed in each other's rooms.

Evaluating the evidence bearing on the children's best interest, we begin by noting the trial court's several predicate-ground findings, unchallenged on appeal, provide substantial support for the court's best-interest findings. *See In re C.H.*, 89 S.W.3d at 28 (same evidence may be probative both of predicate grounds and best interest). Reiterated, the findings include those that the mother engaged in conduct endangering to the children. The mother's admitted use of methamphetamine during the time she had opportunity to work toward reunification with her children gave the trial court ample reason to conclude continuation of her parental relationship with the children carried the risk of further emotional and physical danger to them. Ultimately, the evidence of the mother's conduct allowed the court also to conclude the existing parent-child relationship was not

---

[5] The caseworker testified that C.T.A. submitted to a polygraph examination which showed no signs of deception when he denied the sexual abuse allegations.

8

a proper one. *Holley,* 544 S.W.2d at 371-72; *see In re O.N.H.,* 401 S.W.3d 681, 683 (Tex. App.—San Antonio 2013, no pet.) (for the best-interest determination, the court may consider evidence of a parent's past conduct to be predictive of her future conduct).

By the time of final hearing C.A. and Z.N. had been in Department care some sixteen months. According to the mother's testimony, Z.N. lived with her parents "off and on" during his life but was largely with her, and C.A. was with the mother since birth. There was evidence indicating Z.N. had previously been in Department care. During the children's cases the mother's visitation was stopped because, according to the caseworker, she was unable to complete services and had positive drug screens. As noted, the children were doing well in foster placement and the foster parents wanted to move forward with adoption. When asked if she had doubts of the ability of the foster parents to care for C.A. and Z.N., the caseworker testified, "Absolutely not." From her testimony, the mother's plans for the children call for continued Department conservatorship while she works to gain greater sobriety and stability.

This evidence, reflective of the emotional and physical needs of the children now and in the future; the mother's and the Department's plans for the children, and the relative stability of their current placement as compared with the disfunction they previously experienced, strongly supports the court's conclusion termination of the mother's parental rights was in their best interest. In our evaluation of the evidence, we keep in mind that it was the trial court's task to determine the weight to be given the testimony it heard from the different witnesses. *See In re H.E.B.,* No. 07-17-00351-CV, 2018 Tex. App. LEXIS 885, at *5 (Tex. App.—Amarillo Jan. 31, 2018, pet. denied) (mem.

op.) (noting as factfinder, the trial court was the exclusive judge of the credibility of the witnesses and the weight to be given their testimony).

Considering all the evidence of the best-interest factors in the light most favorable to the trial court's finding, we conclude a reasonable trier of fact could have formed a firm belief or conviction that termination of the mother's parental rights was in the best interest of C.A. and Z.N. *See In re K.M.L.*, 443 S.W.3d 101, 112-13, 116 (Tex. 2014) (legal sufficiency standard). And, viewing all the evidence in a neutral light, we conclude that the disputed and undisputed evidence favoring and disfavoring the finding also permitted a reasonable factfinder to form a firm belief or conviction that termination was in the best interest of C.A. and Z.N. *See In re A.B.*, 437 S.W.3d 498, 502-03 (Tex. 2014) (factual sufficiency standard). Hence, the evidence supporting the court's findings that termination of the mother's parental rights was in the children's best interest was legally and factually sufficient. *See Holley,* 544 S.W.2d at 371-72. We accordingly overrule the mother's appellate issues in case numbers 07-18-00439-CV and 07-18-00440-CV.

### III. The Department's case against S.N.:

#### *In re Z.N,* 07-18-00440-CV

S.N. does not challenge the trial court's finding that termination of his parental rights to Z.N. is in the child's best interest. Rather, through two issues, S.N. argues the two predicate grounds for termination found by the trial court were not supported by legally or factually sufficient evidence.

**First Issue: Sufficiency of Proof, Subsection 161.001(b)(1)(L)**

Family Code subsection 161.001(b)(1)(L) provides for termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has been convicted for being criminally responsible for the death or serious injury of a child under certain sections of the Penal Code. Among the listed Penal Code sections is section 21.11, describing the offense of indecency with a child. TEX. FAM. CODE ANN. § 161.001(b)(1)(L)(iv); TEX. PENAL CODE ANN. § 21.11 (West 2019). Through his first issue S.N. challenges the legal and factual sufficiency of the evidence supporting the trial court's predicate finding that he violated subsection 161.001(b)(1)(L)(iv).

It is undisputed that in December 2008 S.N. was convicted of three acts of indecency with a child and served a sentence of imprisonment that ended some two months before the final hearing. Relying on the indictments and judgments in evidence, the trial court found that S.N. has "been convicted . . . for being criminally responsible for the death or serious injury of a child under" Penal Code section 21.11. The documents indicate that S.N.'s offenses involved three child victims, ages four, ten, and eleven years, and involved contact with the genitals of each child.

To meet its burden of proof under Family Code subsection (L), the Department was required to prove that 1) S.N. committed an act that violated Penal Code section 21.11(a); 2) his guilt for committing the crime was adjudicated and 3) in committing the acts which underlie the crime, S.N. was responsible for a child's death or serious injury. *See In re A.G.D.,* No. 07-15-00201-CV, 2016 Tex. App. LEXIS 688, at *7 (Tex. App.— Amarillo Jan. 22, 2016, no pet.) (mem. op.) (elements of section 161.001(b)(1)(L)

violation) (citing *Vidaurri v. Ensey,* 58 S.W.3d 142, 145 (Tex. App.—Amarillo 2001, no pet.)).

The offense of indecency with a child may be committed by acts of sexual contact or acts of exposure of the anus or genitals. TEX. PENAL CODE ANN. § 21.11(a)(1). Section 21.11 defines "sexual contact" as the following acts, if committed with the intent to arouse or gratify the sexual desire of any person: (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person. TEX. PENAL CODE ANN. § 21.11(c)(1),(2).

S.N.'s evidentiary challenge focuses on the proof that, by his acts of indecency, he S.N. inflicted "serious injury" on any of the child victims. Noting the term "serious injury" is not defined in the Family Code, courts have applied the ordinary meanings of the words. *See, e.g., In re S.G.,* No. 01-18-00728-CV, 2019 Tex. App. LEXIS 2618, at *19 (Tex. App.—Houston [1st Dist.] Apr. 2, 2019, no pet. h.) (op. on reh'g) (mem. op.) (citing *In re A.L.,* 389 S.W.3d 896, 900-01 (Tex. App.—Houston [14th Dist.] 2012, no pet.)). "Serious" means "having important or dangerous possible consequences" and "injury" means "hurt, damage, or loss sustained." *Id.* (citation omitted).

In this court's 2001 opinion in *Vidaurri,* 58 S.W.3d 142, we rejected a contention that a predicate finding under subsection (L) may be sustained merely by proof of the parent's conviction of the offense of indecency with a child. *Id.* at 146. We noted that the statute's required proof of serious injury to the child victim could not reasonably be

inferred merely from the commission of some of the crimes itemized in subsection (L), and we found the offense of indecency with a child to be among those for which additional evidence of serious injury is required. *Id.* at 145-46. The next year, the Texas Supreme Court considered petitions for review in a case in which the court of appeals had deleted a subsection (L) finding from a judgment of termination. The court of appeals found the record of the parent's deferred adjudication for indecency with a child, committed against a four-year-old cousin when the parent was sixteen, contained no showing that the child suffered death or serious injury. It rejected the parent's challenges to another predicate ground, however, and affirmed the judgment of termination. On review, the Texas Supreme Court issued an opinion concluding, "We deny the petitions for review, but disavow any suggestion that molestation of a four-year-old, or indecency with a child, generally, does not cause serious injury." *In re L.S.R.,* 92 S.W.3d 529, 530 (Tex. 2002) (per curiam).

We adhere to the court's statement, and as well disavow any suggestion that indecency with a child, generally, does not cause the child serious injury. The Fort Worth Court of Appeals has read the disavowal in *L.S.R.* as "intimating that psychological or emotional injuries are relevant when determining whether a child has sustained 'serious injury' for purposes of subsection (L)." *In re Z.W.*, No. 02-18-00190-CV, 2018 Tex. App. LEXIS 7539, at *27 (Tex. App.—Fort Worth 2018, no pet.) (Mem. Op.). We agree with our sister court's analysis on that point. *See also C.H. v. Dep't of Family & Protective Servs.,* Nos. 01-11-00385-CV, 01-11-00454-CV, 01-11-00455-CV, 2012 Tex. App. LEXIS 1382, at *16 (Tex. App.—Houston [1st Dist.] Feb. 23, 2012, pet. denied) (mem. op.)

(serious injury under subsection (L) "does not require 'bodily injury' nor is it synonymous with 'serious bodily injury,' as defined in the Penal Code").[6]

Other courts have affirmed subsection (L) findings based on evidence of emotional injury. Clear and convincing evidence of serious injury from indecency with a child, molestation over a period of years, was found in a mother's testimony her daughter suffered "physical trauma" and "emotional and psychological harm." Specifically, the mother said, the victim, then an adult, experienced "a lifelong inability to form relationships," was undergoing counseling and had at times been suicidal. *In re F.G.M.*, No. 10-14-00066-CV, 2014 Tex. App. LEXIS 12818, at \*4 (Tex. App.—Waco Nov. 26, 2014, no pet.) (mem. op.). Testimony by a CPS caseworker with a master's degree in family counseling and experience working with sexually abused children that "the type of sexual abuse that [the terminated father] committed against his daughter causes a child to sustain serious injury to her emotional well-being, and that such an injury could present a 'lifelong problem'" was found sufficient to show serious injury from the father's digital penetration of the sexual organ of the daughter, younger than 14 years old. *In re A.R.R.*, 61 S.W.3d at 700. And in another case, the Department successfully proved a nine-year-old girl sustained serious injury from indecency that involved the defendant's mouth on

---

[6] Pertinent to the case before us, the First Court in *C.H.* used indecency with a child by exposure as an example of a subsection (L) offense that does not require proof of bodily injury, stating "[a] victim of such an offense may not suffer bodily injury but may nonetheless suffer serious injury in the form of emotional or psychological injury." *C.H. v. Dep't of Family & Protective Servs.*, 2012 Tex. App. LEXIS 1382, at \*15 (citing *In re A.R.R.*, 61 S.W.3d 691, 700 (Tex. App.—Fort Worth 2001, pet. denied), *disapproved of on other grounds by In re A.V.*, 113 S.W.3d 355, 360 (Tex. 2003) *and In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002)). *See also R.F. v. Tex. Dep't of Family & Protective Servs.*, 390 S.W.3d 63, 75 (Tex. App.—El Paso 2012, no pet.) (finding child's therapist's testimony established seriousness of injuries suffered from father's indecency with child).

14

the child's vagina and breasts. *In re M.L.R.*, No. 04-13-00299-CV, 2013 Tex. App. LEXIS 10466 (Tex. App.—San Antonio Aug. 21, 2013, pet. denied) (mem. op.). The evidence came from an offense report noting the indecency was reported after the victim took off her blouse at her daycare and showed other children her breasts. When the investigating officer asked her whether the defendant would touch her anywhere other than on her breasts, she became withdrawn and quiet. The officer told her mother the girl was under some type of emotional distress, and he would not proceed further with her statement. *Id.* at *5. The court of appeals held, "[a]ssuming the record must show that the victim of molestation suffered serious injury, in this case, the victim's actions at her daycare as a consequence of the offense and her reaction while being questioned are sufficient evidence of serious injury." *Id.* at *6.

By contrast with the evidence presented in those cases, the Department here produced no evidence of injury, physical or emotional, sustained by any of the three victims of S.N.'s criminally indecent acts. The record contains no indication of the effect on the children of S.N.'s conduct. The Department cites cases it says indicate that serious injury is implicit in the offense of indecency with a child. It first cites *In re F.G.M.*, 2014 Tex. App. LEXIS 12818. We do not agree *In re F.G.M.* holds a conviction for indecency with a child, without more, constitutes clear and convincing evidence of serious injury under subsection (L). As we have noted, the court there described the evidence of emotional and psychological harm suffered by the victim, and found it sufficient. 2014 Tex. App. LEXIS 12818, at *4-5. The same is true for another case the Department cites, *In re M.L.R.*, 2013 Tex. App. LEXIS 10466. As noted, the court in that case also described evidence of serious injury it found sufficient. *Id.* at *6.

15

The Department relies also on *In re M.A.S.*, No. 06-16-00059-CV, 2016 Tex. App. LEXIS 13566 (Tex. App.—Texarkana Dec. 22, 2016, no pet) (mem. op.).  That case involved the terminated father's prior conviction for aggravated sexual assault of a child.  *See* TEX. PENAL CODE ANN. § 22.021 (West 2019).  Emphasizing the seriousness of the offense and the young age of the twelve- or thirteen-year-old child victim, the court found the evidence of serious injury to the child legally sufficient.  2016 Tex. App. LEXIS 13566, at *6.

The Department's brief urges us to reconsider our holding in *Vidaurri,* 58 S.W.3d 142, that serious injury is not implicit in a conviction for indecency with a child.  Finders of fact are permitted to draw reasonable inferences.  *In re E.N.C.*, 384 S.W.3d 796, 804 (Tex. 2012).  As we have noted, the evidence indicates S.N. committed indecency with three young children, ages four, ten, and eleven years, at a time S.N. was age 31.  The January 2008 indictments alleged he touched the genitals of each child, and alleged the offenses occurred on the same "on or about" date in October 2007.  The judgments show S.N. was placed on community supervision in March 2008, pled true to a motion to adjudicate in December 2008 and was sentenced under a plea agreement to three concurrent ten-year sentences and three $1000 fines.  One or more of the child victims may well have sustained serious injury from the indecent acts, like those in the cases discussed, but we are unable to say the facts reflected in the record give rise to a reasonable inference of serious injury.  Nor can we agree with the Department that it proves serious injury merely by proving a conviction for indecency with a child.  *Vidaurri,* 58 S.W.3d at 146; *see Holick v. Smith*, 685 S.W.2d 18, 20-21 ("[T]ermination proceedings should be strictly scrutinized, and involuntary termination statutes are strictly construed

in favor of the parent") (citations omitted); *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (holding same).[7]

Accordingly, we conclude the final-hearing evidence, viewed in the light most favorable to the finding, was legally insufficient to allow the factfinder to form a firm belief or conviction that S.N. caused at least one of his victims to suffer serious injury as required by subsection (L). Because the evidence is legally insufficient, we do not consider its factual sufficiency. S.N.'s first issue is sustained.

**Second Issue: Sufficiency of Proof, Subsection 161.001(b)(1)(O)**

Family Code section 161.001(b)(1)(O) provides "[t]he court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has:

> [F]ailed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing

---

[7] In our consideration of the Department's contention that serious injury to the child victims was implicit in S.N.'s offense of indecency with a child under subsection (L), we think it noteworthy that subsection (L) is like subsection (M) in that it allows one seeking termination of parental rights to establish a predicate ground for termination as a collateral consequence of prior court proceedings involving the parent and another child. *See In re N.G.*, 2019 Tex. LEXIS 465, at *5 ("the collateral consequences of terminating parental rights under [subsection (D) or (E)] are significant"). Moreover, subsection (L) applies to adjudications under Title 3 of the Family Code for conduct causing the death or serious injury of a child and constituting a violation of one of the listed Penal Code provisions. TEX. FAM. CODE ANN. § 161.001(b)(1)(L). That circumstance raises the risks to juvenile offenders who become parents discussed by Chief Justice Frost in her concurring opinion in *In re I.L.G.*, 531 S.W.3d 346, 358 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (Frost, C.J., concurring) (discussing collateral consequences to juvenile parents of predicate findings on D and E grounds). The Department's position on S.N.'s first issue would exacerbate those risks, potentially subjecting a parent to termination of parental rights under subsection (L) "without any other predicate showing," and without proof the adjudicated conduct actually caused the victim serious injury, as subsection (L) requires. *See id.*

conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child[.]

TEX. FAM. CODE ANN. § 161.001(b)(1)(O). By his second issue, S.N. challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that he failed to comply with the provisions of his court-ordered service plan.

As noted, S.N. was released from prison some two months before final hearing and relocated to Dallas. There the Department assigned him a courtesy caseworker who, according to the testifying caseworker, had contact with S.N. The caseworker further testified that she read the courtesy caseworker's records which indicated S.N. had attended two parenting classes, "so far." S.N.'s service plan required him to "participate in and complete Parenting (sic) classes." There was no evidence how many parenting classes S.N. was required to attend nor was there proof of the date of the courtesy caseworker's report. The trial court admitted S.N.'s unsigned service plan for the limited purpose of showing the services S.N. was required to complete. The caseworker further testified during the two months preceding final hearing she had "been unable to get ahold" of S.N. On cross-examination, the caseworker acknowledged that other than the courtesy caseworker's reports, she had no personal knowledge of what services S.N. had performed.

S.N.'s service plan required that he maintain "regular contact with his caseworker regarding his participation and progress in services." As noted, the caseworker testified she was unable to contact S.N. for two months preceding final hearing. Without citing authority, the Department responds to S.N.'s sufficiency challenge with argument that this

constitutes legally and factually sufficient evidence S.N. did not fully comply with a provision of the service plan. But it is undisputed that in Dallas S.N. was assigned a Department courtesy caseworker with whom he had contact. There was no evidence that he failed to contact the courtesy caseworker as directed. Based on the evidence and testimony, we conclude a reasonable factfinder could not have formed a firm belief or conviction that S.N. failed to maintain regular contact with his caseworker.

The Department also brings argument based on the testimony that the courtesy caseworker's records show S.N. had attended two parenting classes, "so far." It argues the trial court was reasonably entitled to form a firm belief or conviction that more than two classes were required, S.N. therefore did not complete the required parenting classes, and accordingly did not comply with the provisions of his court-ordered plan of services. We find it remarkable that the Department relies on such inferences, founded on its speculation of the meaning of "so far," related through the hearsay report of the courtesy caseworker, for clear and convincing proof of a ground for termination of a parent's rights.

Viewing the evidence in the light most favorable to the trial court's finding, we conclude some evidence supports an implicit finding that S.N. did not comply with his plan of services. However, considering the undisputed testimony regarding the courtesy caseworker's role with S.N., we cannot agree that the unexplained "so far" remark and the witness's inability to reach S.N. permitted the factfinder reasonably to form a firm belief or conviction S.N. failed to comply with the provisions of his court-ordered service plan. *In re C.H.,* 89 S.W.3d at 25. We therefore conclude the Department's (O)-ground evidence was factually insufficient to dissolve the parent-child relationship between S.N.

and Z.N.  *See In re B.P.,* No. 07-14-00037-CV, 2014 Tex. App. LEXIS 8127, at *20 (Tex. App.—Amarillo July 25, 2014) (mem. op.).  S.N.'s factual sufficiency challenge under his second issue is sustained.  We will accordingly reverse the trial court's order to the extent it terminated the parental rights of S.N. to Z.N. and remand that portion of the case for a new trial.

## Conclusion

We affirm the final order in 07-18-00439-CV which terminated the mother's parental rights to C.A. and that portion of the final order in 07-18-00440-CV which terminated the mother's parental rights to Z.N.  TEX. R. APP. P. 43.2(a).  We reverse and remand for a new trial that portion of the final order in 07-18-00440-CV which terminated S.N.'s parental rights to Z.N.  TEX. R. APP. P. 43.2(d).  Any retrial of the Department's case against S.N. must commence no later than 180 days after this court's mandate issues.  TEX. R. APP. P. 28.4(c).

James T. Campbell
Justice