

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-20-00071-CV
No. 07-20-00072-CV
_____

**IN THE INTEREST OF I.J. AND L.N.J., JR., CHILDREN**

On Appeal from the County Court at Law Number 1
Randall County, Texas
Trial Court Nos. 75,483-L1 & 76,223-L1; Honorable Jack Graham, Presiding

April 30, 2020

## MEMORANDUM OPINION

Before PIRTLE, PARKER, and DOSS, JJ.

Appellant, L.N.J, Sr., appeals from the trial court's orders terminating his parental rights to his son and daughter.[1]  By a sole issue, he contends the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights was in the children's best interests.  We affirm.

_____

[1] To protect the privacy of the parent and the children, we refer to them by their initials.  *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2019).  *See also* TEX. R. APP. P. 9.8(b).  The children's mother was appointed permanent managing conservator and is not a party to this appeal.

**BACKGROUND**

L.N.J, Sr. and J.M. had a son, L.N.J., Jr., in January 2018. At that time, they were living in Harris County. When the child was approximately six months old, he became ill and his parents took him to a neighborhood hospital. The doctor recommended that the child be transported to a children's hospital.

The next day, the parents took the child to the children's hospital and tests and scans revealed he had multiple old and new fractures to his skull, ribs, arms, and legs. The parents offered explanations that the medical staff determined could not have caused the injuries sustained by the child.

Appellee, the Texas Department of Family and Protective Services, removed the child from the home after J.M. called a caseworker and reported that L.N.J., Sr. had been abusing their son. The child was placed with his paternal grandmother and paternal aunt and the parties entered into a family service plan.

Two days later, the parents refused to cooperate with a detective regarding the injuries to the child. They contacted an attorney, J.M. recanted her story, and they took the child from his placement with relatives.

While the Harris County case was pending, J.M. became pregnant. The Department had advised her to notify her caseworker when she gave birth because of the pending case involving her son. J.M. gave birth to a daughter, I.J., in January 2019, in Randall County. She did not notify the Department of the birth. Her failure to notify her caseworker notwithstanding, the new baby was removed from the parents after her birth due to the pending case and concern for the newborn's safety. The Department was also

2

concerned that the parents would flee with the newborn because L.N.J., Sr. had expressed that the Department would not be taking his new baby. The Department opened a new case for the baby. Ultimately, L.N.J., Sr. was arrested for injuries inflicted on his son.

The Department's Harris County case was later transferred to Randall County and the two cases were consolidated for trial. At the time of the final hearing, L.N.J., Sr. had not yet been found guilty for the injuries committed against L.N.J., Jr. He did not appear at the final hearing but was represented by counsel. At L.N.J., Sr.'s request, counsel asked for a continuance, after being advised by him that he was searching for new counsel. The request was denied and the hearing continued.

The only two witnesses were J.M. and a child protective services specialist. Following their testimony, the trial court terminated L.N.J., Sr.'s parental rights to L.N.J., Jr. under section 161.001(b)(1)(D) (knowingly placed or allowed the child to remain in conditions or surroundings which endangered his well-being), (E) (engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered his well-being), (N) (constructively abandoned the child), and (O) (failed to comply with a court order that established the actions necessary for the parent to obtain the return of the child following his removal under chapter 262 of the Family Code); and, regarding I.J., the trial court terminated his parental rights under section 161.001(b)(1)(N) and (O). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O) (West Supp. 2019). The trial court also found that termination of L.N.J., Sr.'s parental rights, as to both children, was in their best interests. § 161.001(b)(2). The trial court further ordered that J.M. be appointed

3

permanent managing conservator of the children and dismissed the Department from the case.[2]

### APPLICABLE LAW

The Texas Family Code permits a court to terminate the relationship between a parent and a child if the Department establishes one or more acts or omissions enumerated under section 161.001(b)(1) of the Code and that termination of that relationship is in the best interest of the child. *See* § 161.001(b)(1), (2); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). The burden of proof is by clear and convincing evidence. § 161.206(a) (West Supp. 2019). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2019).

### STANDARD OF REVIEW

The natural right existing between parents and their children is of constitutional magnitude. *See Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). *See also Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination proceedings are strictly construed in favor of the parent. *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012). Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve those rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). The Due Process Clause of the United States Constitution and section 161.001 of the Texas

---

[2] The trial court also granted J.M.'s request to change the children's surname to hers.

4

Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *See In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).

In a legal sufficiency challenge, we credit evidence that supports the verdict if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not have done so. *In re K.M.L.*, 443 S.W.3d 101, 112-13 (Tex. 2014). However, the reviewing court should not disregard undisputed facts that do not support the verdict to determine whether there is clear and convincing evidence. *Id.* at 113. In cases requiring clear and convincing evidence, even evidence that does more than raise surmise and suspicion will not suffice unless that evidence is capable of producing a firm belief or conviction that the allegation is true. *Id.* If, after conducting a legal sufficiency review, a court determines that no reasonable fact finder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally insufficient. *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266).

In a factual sufficiency review, a court of appeals must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266 (citing *In re C.H.*, 89 S.W.3d at 25). We must determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *In re J.F.C.*, 96 S.W.3d at 266. We consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have

credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

### BEST INTEREST FINDING

L.N.J., Sr. does not challenge any of the statutory grounds for termination. Rather, by a sole issue, he contends the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights was in the children's best interests. We disagree.

The Department was required to prove by clear and convincing evidence that termination of L.N.J., Sr.'s parental rights was in the children's best interests. § 161.001(b)(2); *In re K.M.L.*, 443 S.W.3d at 116. Only if no reasonable fact finder could have formed a firm belief or conviction that termination of his parental rights was in the children's best interest can we conclude the evidence is legally insufficient. *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266).

There is a strong presumption that the best interest of the child will be served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. § 263.307(a) (West 2019). Section 263.307(b) of the Family Code provides a non-exhaustive list of factors to consider in determining whether the parent is willing and able to provide the child with a safe environment. One of those factors is providing the child with a safe home environment, free from threats of physical harm. § 263.307(b)(12)(D).

6

Additionally, the Supreme Court has set out other factors to consider when determining the best interest of a child. *See Holley*, 544 S.W.2d at 371-72. Those factors include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to promote the best interest of the child; (6) the plans for the child by the individual or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* The Department is not required to prove all of these factors and the absence of evidence of one or more does not preclude a fact finder from reasonably forming a strong conviction or belief that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27. This is particularly so where the evidence is undisputed that the parental relationship endangered the safety of a child. *Id.*

Evidence that supports one or more statutory grounds for termination is also probative of the trial court's best interest finding. *See In re C.H.*, 89 S.W.3d at 28. *See also In re E.C.R.*, 402 S.W.3d 239, 249-50 (Tex. 2013). The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence. *See In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). Additionally, a child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in determining best interest. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

**ANALYSIS**

By his sole issue, L.N.J., Sr. acknowledges that evidence which supports a statutory ground for termination is relevant to a best interest determination. Nevertheless, he maintains the evidence is legally and factually insufficient to support the trial court's best interest finding in this case. We disagree.

J.M. testified that L.N.J., Sr. abused her and their son. She explained that she recanted her story and perjured herself at a previous hearing because she was still living with L.N.J., Sr. and feared for her safety. On one occasion, he showed up at her place of employment and assaulted her. After that, she had no contact with him for almost a year. She filed a police report, but at the time of the final hearing, no action had been taken.

While J.M. worked her court-ordered services, the children were in their paternal grandmother's care. J.M. testified she completed her services and learned from them. She further testified that it would be in her children's best interests to terminate their father's parental rights. She described him as a "stranger" to the children.

After J.M. completed her court-ordered services, she was reunited with her children beginning in September 2019, approximately four months before the final hearing. According to the Department's services specialist, J.M. was a very capable mother and was meeting all of her children's needs, including their medical needs. She testified that J.M. was doing "a great job" and affirmed that the children were thriving in their mother's care.

The Department was not required to establish all the *Holley* factors. The children were too young to express their wishes. When children are too young to express their desires, the fact finder may consider their circumstances, for example, that they have bonded with their care giver and are well cared for in their current placement. *See In re E.W.*, Nos. 14-19-00666-CV, 14-19-00724-CV, 2020 Tex. App. LEXIS 1232, at *31 (Tex. App.—Houston [14th Dist. Feb. 13, 2020, no pet.) (mem. op.). The Department established that J.M. took advantage of programs to assist her in caring for her children and they were thriving in her care. She completed her services and testified that she benefitted from them. She proved she could properly care for her children and provide them with a stable home.

L.N.J., Sr. maintains that a best interest finding must have a firm basis on facts standing apart from the offending behavior in support of the statutory grounds. Relying on *In re S.R.L.*, 243 S.W.3d 232, 235 (Tex. App.—Houston [14th Dist.] 2007, no pet.), he argues that under the *Holley* factors, no rational trier of fact could have formed a firm belief or conviction that terminating his parental rights was in his children's best interests.

In *In re S.R.L.*, the father had a criminal history that resulted in lengthy periods of incarceration. However, evidence favorable to him was presented at the final hearing, including completion of services that were available to him during incarceration. The trial court noted that the father had not "done anything bad" to his children. *Id.* at 234. Both the guardian ad litem and the trial court believed that the father should have some involvement with his children but that there was no legal basis to award visitation to him if his rights were terminated. *Id.* After hearing all the evidence, the trial court announced that the Department had proven only one statutory ground for termination (subsection (Q)

9

which applies to incarcerated parents) but had not established that termination was in the children's best interests. *Id.* However, contrary to its announcement, in its written order the trial court entered a finding that termination was in the children's best interests. *Id.*

On appeal, the parent contested the legal and factual sufficiency of the statutory ground and the best interest finding. Although the court of appeals noted that the best interest determination is a separate inquiry, it agreed the record showed that the trial court had not formed a firm belief or conviction that termination was in the children's best interests and reversed the termination order. *Id.* at 235-36.

*In re S.R.L.* is, therefore, clearly distinguishable. We agree that the best interest finding is a separate inquiry; however, it is well-settled that evidence which supports the statutory grounds is probative of the best interest finding. *See In re C.H.*, 89 S.W.3d at 28. Furthermore, evidence presented in *In re S.R.L.* negated a finding that termination of the father's rights was in the best interests of his children, a circumstance missing in this case.

Here, the evidence showed that L.N.J., Sr. was abusive.[3] The undisputed evidence showed that he seriously injured his son when he was just six months old and was charged with injury to a child. He also assaulted J.M. while she was at work. The testimony further established that he worked only some of his services, while J.M.

---

[3] Intertwined with his best interest argument, he asserts the evidence was insufficient to show he abused his son. He did not, however, challenge the statutory grounds that he allowed his son to remain in conditions or surroundings that endangered his well-being or that he engaged in conduct that endangered his son's well-being. Thus, those findings are binding on this court and are probative evidence of the best interest finding. *See In re C.A.*, 579 S.W.3d 140, 146 (Tex. App.—Amarillo 2017, pet. denied); *In re S.R.*, No. 07-19-00164-CV, 2019 Tex. App. LEXIS 8701, at *15 (Tex. App.—Amarillo Sept. 26, 2019, no pet.) (mem. op.).

completed her services and provided a safe and stable home for her children.  L.N.J., Sr. did not appear for the final hearing and no evidence was presented on his behalf about a plan for the children or any stability on his part affecting his ability to parent his children. Based on the record before us, we find the trial court's firm belief or conviction that termination of L.N.J., Sr.'s parental rights was in the children's best interests is supported by clear and convincing evidence.  Accordingly, L.N.J., Sr.'s sole issue is overruled.

CONCLUSION

The trial court's orders terminating the parental rights of L.N.J., Sr. to his son and daughter are affirmed.

Patrick A. Pirtle
Justice